_____



**SO ORDERED,**

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: September 29, 2017**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **VCR I, LLC** | **CASE NO. 1202009EE** |

| | |
|---|---|
| Hon. Derek A. Henderson<br>derek@derekhendersonlaw.com<br>1765-A Lelia Drive<br>Jackson, MS 39216 | Trustee and Attorney for the Trustee |
| Hon. Douglas C. Noble<br>dnoble@mmqnlaw.com<br>602 Steed Road, Suite 200<br>Ridgeland, MS 39157 | Attorney for the Trustee |
| Hon. Craig M. Geno<br>cmgeno@cmgenolaw.com<br>Hon. Jarret P. Nichols<br>jnichols@cmgenolaw.com<br>587 Highland Colony Parkway<br>Jackson,  MS 39157 | Attorneys for Gluckstadt Holdings, LLC |

Edward Ellington, Judge

**MEMORANDUM OPINION**

**THIS MATTER** came before the Court on the *Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property* (Dkt. #546) filed by Derek A. Henderson, Chapter 7 Trustee, and the *Response and Objection of Gluckstadt Holdings, LLC to Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property* (Dkt. #558). Having considered same, the evidence presented at trial, and the respective briefs filed by the parties, the Court finds that the *Response and Objection of Gluckstadt Holdings, LLC to Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property* (Dkt. #558) should be overruled and that the *Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property* (Dkt. #546) filed Derek A. Henderson, Chapter 7 Trustee, should be granted.

**FINDINGS OF FACT[1]**

On February 20, 2008, VCR I, LLC borrowed $984,450.96 from BankPlus.[2] The maturity

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2] There is no dispute as to the facts. Some of the following facts are found in the *Agreed Order Stipulating to Facts* (Dkt. #156) (Stipulation) entered on February 25, 2013, prior to a trial on *BankPlus' Motion for Relief from Automatic Stay* (Dkt. #21). The Stipulation was agreed to by BankPlus, the Debtor-in-Possession, and Mark S. Bounds Realty Partners, Inc. While Derek A. Henderson, the Chapter 7 Trustee, and Gluckstadt Holdings, LLC were not parties to the Stipulation, the facts in the Stipulation are not in dispute. The remaining facts were introduced at trial.

date of the loan was February 20, 2013. The promissory note is secured by a *Deed of Trust* on approximately forty-four (44) acres located at the intersection of Interstate 55 and Gluckstadt Road in Madison County, Mississippi. BankPlus' lien constituted the first lien on the forty-four (44) acres.

Mark S. Bounds Realty Partners, Inc. (Bounds Realty) sued VCR I, LLC in the Circuit Court of Madison County, Mississippi. On January 9, 2012, the circuit court entered summary judgment in favor of Bounds Realty. The circuit court awarded $235,000.00 plus interest and attorney's fees (Judgment) to Bounds Realty for unpaid real estate commissions. The Judgment was duly enrolled in the judgment roll of Madison County, Mississippi, on January 10, 2012.

On May 2, 2012, the Mississippi Transportation Commission[3] (MTC) filed a complaint in Madison County, Mississippi, in the Special Court of Eminent Domain (ED Action) seeking to acquire approximately 12.97 acres of the VCR I, LLC's property. This property was subject to BankPlus' deed of trust. MTC appraised the 12.97 acre track at $2,009,100.00.

When Bounds Realty was unable to collect its judgment against VCR I, LLC, Bounds Realty filed a Notice of Sheriff's Sale on May 22, 2012. A sheriff's sale of all of VCR I, LLC's property was scheduled for June 21, 2012, between the hours of 11:00 A.M. and 4:00 P.M.

Minutes before the commencement of the sheriff's sale on June 21, 2012,[4] VCR I, LLC filed a petition for relief under Chapter 11 of the Bankruptcy Code. VCR I, LLC thereafter became the Debtor-in-Possession (DIP). Due to the bankruptcy filing, the sheriff's sale was not conducted on

---

[3]The Mississippi Transportation Commission is a corporate entity of the State of Mississippi. It holds the right to exercise the power of eminent domain by virtue of Miss. Code. § 65-1-1, *et seq.*

[4]The bankruptcy petition was filed at 10:46 A.M. on June 21, 2012.

June 21, 2012.

Once the petition was filed, the automatic stay pursuant to 11 U.S.C. § 362[5] went into effect. Even though the automatic stay was in effect, Bounds Realty did not get an order lifting the automatic stay before it had the sheriff go forward with the sale on June 22, 2102.

Gluckstadt Holdings, LLC (GH) appeared at the sheriff's sale on June 22, 2012. GH's bid of 2.5 million dollars for all forty-four (44) acres was the only bid received, and it was accepted by Bounds Realty.[6] Because of the filing of the bankruptcy case, no funds were exchanged nor was a deed to the forty-four (44) acres given to GH.

In the bankruptcy case, BankPlus filed a *Motion for Relief from Automatic Stay* (Dkt. #21) on July 11, 2012, seeking to have the automatic stay lifted as to the forty-four (44) acres. Bounds Realty filed a *Joinder in Motion for Relief from Automatic Stay* (Dkt. #31) on July 18, 2012.

On July 13, 2012, Bounds Realty filed a *Motion to Dismiss* (Dkt. #26). The thrust of Bounds Realty argument was that the DIP's bankruptcy case should be dismissed because it was a single asset case, and therefore, was a bad faith filing.

The MTC filed a *Motion to Lift Automatic Stay and Abandonment from Bankruptcy Estate* (Dkt. #67) on August 20, 2012. The MTC sought to have the stay lifted so that it could proceed with the ED Action as to the 12.97 acres.

A trial was set for January 22, 2013, on both BankPlus and MTC's stay motions and the

---

[5] Hereafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[6] Because the ED Action was pending at the time of the sheriff's sale, if GH had been successful in its attempt to purchase all forty-four (44) acres for 2.5 million dollars, GH would have received all of the funds from the ED Action on the 12.97 acres (later determined to be over three (3) million dollars).

motion to dismiss. GH appeared at the trial on the stay motions and the motion to dismiss. GH again expressed its interest in purchasing part of the DIP's property. GH negotiated with the DIP, BankPlus and the MTC, and the parties agreed to settle all of the matters set for hearing. As part of the settlement, the DIP agreed to sell part of its property to GH (Disputed Property). The settlement was dictated into the record, and orders were subsequently submitted memorializing the settlement.[7]

The *Agreed Order* (Dkt. #159) (Order) was entered on MTC's stay motion on March 1, 2013. In the MTC's Order, the parties agreed to cooperate with the MTC in the ED Action in state court.

Also on March 1, 2013, the *Agreed Order* (Dkt. #158) (MTD Order) on the motion to dismiss was entered. The MTD Order memorialized the terms of the settlement reached by the parties on January 22, 2013. While the MTD Order covers many items, the provision which is in controversy is found on page 2, paragraph d, of the MTD Order:

> The Debtor agrees to sell to Gluckstadt Holdings, LLC ("GH") good fee simple marketable title to 7.65 acres of real property located in the Northwest quadrant of the intersection of Interstate Highway 55 and Gluckstadt Road in Madison County, Mississippi, free and clear of all liens, encumbrances and title defects and objections. Said property was sketched, generally, in Exhibit 1 introduced into evidence by Bounds Realty during the course of the settlement announcement in connection with the Motion. A copy of Exhibit 1 that was introduced at the hearing is attached, incorporated by reference and marked as "Exhibit 1" hereto. The 7.65 acre parcel is that which is in the Southwest most area of said quadrant and bounded on the South and East by the new MTC right of way currently under acquisition by MTC in said eminent domain proceeding and bounded on the North by Madison County right of way for Calhoun Station Road and on the West by said MTC right of way and/or said Calhoun Station Road right of way. The purchase price for the real property the Debtor will accept, and that GH will pay, is $612,500.00. The Debtor shall file and notice a motion for authority to sell the real property, free and clear of all liens, claims and interests, to GH, for $612,500.00, as soon as

---

[7] The Court notes that the settlement agreement was not noticed to all creditors as required by Federal Rule of Bankruptcy Procedure 9019.

>possible, with the first priority lien of BankPlus (the "Bank") and the second priority lien of Bounds Realty attaching to the proceeds, assuming that the first priority lien of the Bank and the second priority lien of Bounds Realty have not been paid from the eminent domain proceeding proceeds at the time the GH purchase price is paid. GH shall obtain a survey of said property, and provide a metes and bounds description of the real property, to the Debtor upon completion, which description shall be the subject of the conveyance. The Debtor further agrees to provide title restrictive covenants on a separate 5.91 acre tract, which covenants shall run with the land benefiting *(sic)* said 7.65 acre parcel and burdening said 5.91 acre parcel. Said burdened parcel is also described in Exhibit 1 that was introduced at the hearing and that is attached hereto as Exhibit 1. The restrictions will prohibit said 5.91 acre parcel from being used as a motor fuel sales facility and/or a convenience store or for the sale of merchandise in competition with the sale of such goods as may be sold by or from a convenience store nor may a motor fuel sales facility or convenience store be constructed upon said 5.91 acre parcel for a period of 35 years from and after the date of the sale to GH. GH will also provide a survey, containing a metes and bounds description, of the 5.91 acres, which description shall be the subject of said restrictive covenants. Said 5.91 acre parcel is located across Calhoun Station Road from the 7.65 acre parcel. The West end of said 5.91 acre parcel abuts Church Road. The title restriction shall be filed of record upon approval, by this Court, of the Debtor's motion to sell the 7.65 acres to GH.

*Agreed Order*, Case No. 1202009EE, Dkt. #158, pp. 2-4, Mar. 1, 2013.

Basically, in the MTD Order, the DIP agreed to sell 7.65 acres to GH for $612,500.00, and to enter into a restrictive covenant on an additional 5.91 acres adjacent to the Disputed Property. The restrictive covenant would prohibit a motor fuel sales facility and/or a convenience store from being built on the 5.91 acres and would run for a period of 35 years. The MTD Order states that the DIP would file a motion to sell the Disputed Property (with restrictive covenant) and would notice the motion out to all creditors. All parties agree that the DIP never filed a motion to sell the 7.65 acres to GH.

Based on the MTC's appraisal of the 12.99 acres, the MTC paid $2,011,700.00[8] to the

---

[8]The record is not clear when the $2,011,700.00 *quick-take money* was paid to the Trustee.

bankruptcy estate. This is colloquially called *quick-take money*.[9] Out of the *quick-take money,* the liens held by BankPlus and Bounds Realty on the DIP's property were paid in full and satisfied.[10] After payment of the *quick-take money,* the ED Action continued in Madison County to address the issue of what was just compensation for the taking of the DIP's property.

On October 18, 2013, an *Order Granting United States Trustee's Second Motion to Convert* (Dkt. #195) was entered. The DIP's case was converted to a Chapter 7, and the DIP ceased to exist.[11] Derek A. Henderson was appointed the Chapter 7 Trustee (Trustee).

GH filed a *Motion to Compel Compliance with Agreed Order* (Dkt. #242) on January 17, 2014. GH sought to have the Court compel the Trustee to comply with the MTD Order and to file a motion to sell the 7.65 acres to GH for $612,500.00. The parties entered into several scheduling orders, but the Trustee and GH eventually reached an agreement with regard to the motion to compel. An *Order Granting in (sic) Motion to Compel in Part* (Dkt. #509) was entered on April 7, 2016. In the order, the parties agreed that the Trustee would file a motion to sell the Debtor's real property pursuant to § 363 and that the sale motion would be noticed out as required by the Federal

---

[9] The Mississippi Code sets forth a procedure by which a condemning authority may secure immediate possession of property which it seeks to take by eminent domain. . . . Section 11-27-83 requires the condemner to state in its complaint that it seeks immediate possession . . . . As soon as process has been served, the court appoints an independent appraiser who shall appraise the property proposed for taking and return a report . . . . The court shall review the report and, . . . grant the right to immediate entry 'unless, for other cause shown or for uncertainty concerning the immediate public need for such property … *(sic)* the judge shall determine … *(sic)* right of entry should be denied.' Upon entry of an order of immediate possession, the condemning authority shall pay 85% of the independent appraiser's valuation into the registry of the court, which the landowner is entitled to withdraw. Withdrawal does not affect the landowner's right to a jury trial on the question of just compensation. 4 *MS Prac. Encyclopedia MS Law* § 30:36, The quick-take statute.

[10] Trial Transcript at 26.

[11] Hereafter, VCR I, LLC will no longer be referred to as the DIP. Instead, VCR I, LLC will be referred to as the Debtor.

Rules of Bankruptcy Procedure. This motion would include the 7.65 acres (Disputed Property) to which GH asserted an interest and claim. The parties reserved their rights, claims, and defenses of any kind.

In the ED Action, on April 30, 2015, a jury in Madison County, Mississippi, found that the Debtor would "be damaged by the acquisition of their property for public use, in the sum of $3,100,303."[12] The MTC appealed this verdict, but the parties eventually settled, and the appeal was dismissed. It was agreed by the parties that a just compensation for the taking of the Debtor's 12.99 acres was $3,261,700.00.[13]

On November 4, 2016, the *Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims – Real Property* (Dkt. #546) (Sale Motion) was filed. In the Sale Motion, the Trustee requested that the Court authorize a sale to the highest bidder of four (4) separate tracts of property owned by the Debtor. The Disputed Property is included in the sale as Tract 4.

In the Sale Motion, the Trustee acknowledges the agreement made in the MTD Order and quotes the language in paragraph d of the MTD Order. The Sale Motion states that the opening bid for Tract 4 (Disputed Property) would be $612,500.00. The Sale Motion further states that the Trustee "is under no obligation to sell to GH unless the Opening Bid of GH is the highest and best

---

[12]*Trustee's Report*, Case No. 1202009EE, Dkt. #522, Exhibit *Amended Final Judgment,* p. 2, May 25, 2016.

[13]Since the Debtor had previously received the $2,011,700.00 *quick-take money*, the court ordered the MTC to pay to the bankruptcy estate $1,250,000.00 as full satisfaction of the judgment. *Id.* at 4.

bid. Nothing prevents GH from increasing its bid and participating in the auction process."[14] Pursuant to Federal Rules of Bankruptcy Procedure 6004(a) and 2002(a)(2), the Trustee noticed the Sale Motion out to all creditors for twenty-one (21) days (Dkt. #547).

On November 28, 2106, GH filed its *Response and Objection of Gluckstadt Holdings, LLC to Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims – Real Property* (Dkt. #558) (Objection). GH filed the only response or objection to the Sale Motion. In its Objection, GH alleges that the Trustee is bound by the terms in the MTD Order, and therefore, the Trustee cannot auction the Disputed Property to the highest bidder. GH argues that since the Trustee is bound by the MTD Order, the only avenue available to the Trustee is for the Trustee to sell the Disputed Property to GH for $612,500.00 and to maintain the restrictive covenant on the adjacent property.

The Sale Motion and Objection were tried on April 26, 2017.[15] The parties submitted their *Order Setting Briefing Schedule* (Dkt. #615) on June 19, 2017. Once the final brief was filed on September 6, 2017, the Court took the matter under advisement.

---

[14]*Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims – Real Property*, Case No. 1202009EE, Dkt. #546, unnumbered page 4, Nov. 4, 2016.

[15]GH filed a *Proof of Claim* (Claim #9-1) on February 11, 2014, for an unliquidated claim, but for at least $1,000.000.00. GH does not hold or allege a pre-petition claim against the Debtor. Rather, it claims this is a post-petition administrative claim based on its claim that the MTD Order was breached by the Debtor. The Trustee filed *Trustee's Objection to Claim No. 9 – Gluckstadt Holdings, LLC* (Dkt. #296) and GH filed its *Answer and Response of Gluckstadt Holdings, LLC's To Trustee's Objection to Claim Number 9* (Dkt. #307). These matters were also set for trial on April 26, 2017. At the trial, the parties agreed to hold the matters related to GH's proof of claim in abeyance pending the resolution of the Sale Motion and Objection. (Trial Transcript at 4-5).

**CONCLUSIONS OF LAW**

**I. Jurisdiction**

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(A), (N), and (O).

**II. Standing of GH to Object to Sale**

The Trustee alleges that GH does not hold a pre-petition claim against the Debtor and is not a creditor of the Debtor. The Trustee alleges that GH is simply a prospective purchaser of property of the estate, and therefore, GH does not have standing to object to the sale.

This Court has previously held that a prospective purchaser does not have standing to object to a sale motion. *In re Condere Corp.,* 228 B.R. 615, 624 (Bankr. S.D. Miss. 1998). In this situation, however, the only way to determine whether GH potentially has a post-Chapter 11 and pre-Chapter 7 claim against the Debtor is for the Court to determine whether the MTD Order binds the Trustee to sell the Disputed Property to GH. Therefore, for the sole purpose of ruling on the Sale Motion, the Court will presume that GH has a claim against the estate and has standing to object to the Sale Motion.

**III. Motion to Sell Under § 363**

The settlement reached by the parties in 2013 contemplates the Debtor selling property of the bankruptcy estate to GH. The sale of a debtor's assets outside the ordinary course of business is governed by § 363(b). Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[16] In

---

[16] 11 U.S.C. § 363(b)(1).

addressing the standards of a § 363(b) sale, the Court of Appeals for the Fifth Circuit held:

> A sale of assets under § 363, as implemented by rule 6004, requires notice and a hearing and is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons. *See Cont'l*, 780 F.2d at 1226. A trustee has the duty to maximize the value of the estate. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). As a general matter, the trustee must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal. 3 *Collier on Bankruptcy* ¶ 363.02[1][f] (15th ed. rev. 2009).

*The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010).

### A. Is the Trustee Bound to Sell to GH?

The parties do not dispute that a motion to sell property of the estate must be noticed out to all creditors and subsequently approved by the Court. The dispute in this case arises as to what the Trustee is required to notice out. GH asserts that the Trustee is bound by the terms of the MTD Order and that all the Trustee can notice out is a sale of the Disputed Property to GH for $612,500.00 (with restrictive covenant). The Trustee asserts that he has noticed out GH's offer of $612,500.00 (with restrictive covenant), but he may conduct an auction of all of the estate's property and is not bound to sell the Disputed Property only to GH for $612,500.00 (with restrictive covenant).

The facts of the case of *In re Black*, 2:11-CV-258, 2015 WL 363495 (S.D. Tex. Jan. 27, 2015), *aff'd sub nom. In re BNP Petroleum Corp.*, 642 Fed. Appx. 429 (5th Cir. 2016), are analogous to the case at bar. In *Black,* the trustee negotiated a settlement with Black. The Black settlement agreement specifically stated that it was "'subject to final approval from the Bankruptcy Court.'"[17]

---

[17]*In re Black*, 2015 WL 363495, at *2.

The district court noted that nothing in the Black settlement "expressly precluded the Trustee from negotiating any other agreements that might better resolve the issues confronting the Estates,"[18] nor was there any language in the Black settlement which would compensate Black if the trustee failed to get the Black settlement approved.

Before the Black settlement was approved by the bankruptcy court, the trustee negotiated and accepted a settlement from a different party. The trustee noticed out both settlement agreements, but expressed his preference for the second settlement. The bankruptcy court approved the second settlement, and Black appealed. The district court and the Fifth Circuit (in an unpublished opinion) affirmed the bankruptcy court.

Citing the Fifth Circuit case of *In re Moore*,[19] the district court rejected Black's arguments and noted that a trustee had a duty to entertain all serious offers and to maximize the value of the estate. "For that reason, no agreement is final and enforceable until approved by the bankruptcy court–as expressly set out in both the Black Settlement and the Shor Sale . . . . 'A proposed settlement may bind the parties, but it does not bind the courts; otherwise, the approval process would be meaningless.' *Moore,* 608 F.3d at 266."[20] Further, the district court held that because of the standards a trustee must meet for the approval of a sale pursuant to § 363(b), "nothing about an agreement's 'binding' nature can preclude the Trustee from entertaining additional offers."[21]

In the case at bar, the Court finds that when the Trustee filed the Sale Motion, the Trustee

---

[18]*Id.*

[19]*Supra,* at 10.

[20]*In re Black*, 2015 WL 363495, at *8 (citation omitted).

[21]*Id.* at *9.

complied with what was required to be done pursuant to the MTD Order. The MTD Order stated that "[t]he Debtor shall file and notice a motion for authority to sell the real property, free and clear of all liens, claims and interests, to GH, for $612,500.00."[22] That is exactly what the Trustee did: the Trustee filed the Sale Motion and noticed all creditors and interested parties of GH's offer of $612,500.00 (with restrictive covenant) for the Disputed Property. The Trustee has fulfilled his obligation under the MTD Order, and contrary to GH's assertion, like the trustee in *Black*, nothing precludes the Trustee from accepting or seeking additional offers.

In GH's Objection, GH prays that the Court will "deny the Motion, but authorize the sale of the 7.65 acres, upon the terms and conditions of the Agreed Order so that Gluckstadt Holdings will receive title to the 7.65 acres pursuant to the terms of the Agreed Order for the consideration already stated, approved and paid."[23] The Court does not find GH's position to be supported by the holdings of *Moore* and *Black* or the Bankruptcy Code. If the Court denied the Sale Motion and ordered the Trustee to sell the Disputed Property to GH, the Court would be ignoring not only § 363 and the related bankruptcy rules, but also the holdings in *Moore* and *Black*.

The MTD Order clearly states that a motion to sell the property would be filed and noticed out. When the parties dictated their settlement into the record on January 22, 2013, the Court made it abundantly clear that any sale of estate property would have to be noticed out to all creditors:

---

[22]*Agreed Order*, Case No. 1202009EE, Dkt. #158, p. 4, Mar. 1, 2013.

[23]*Response and Objection of Gluckstadt Holdings, LLC to Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims – Real Property* (Dkt. #558), Case No. 1202009EE, Dkt. #558, p. 3, Nov. 28, 2016.

Even though GH states that consideration had been *paid*, the record does not reflect any such payment by GH to the bankruptcy estate.

> Court: [I]n order to sell that 7.65 acres you're going to have to notice that out to all interested parties . . . . if you need to take a break and explain to them what's got to be done before really the property can be sold, [and] any money disbursed, I'll be happy to let you do that.
>
> Mr. Geno: I'll be glad to, Your Honor, but I think everyone understands that.

*Transcript of Motions Hearing Before Honorable Edward Ellington*, Case No. 1202009EE, Dkt. #284, p. 9, Mar. 4, 2014.

Similar to the *Black* case, there is no language in the MTD Order which precludes the Trustee from accepting other offers or bids on the Disputed Property. But regardless of whether the MTD Order contained restrictive language, no agreement by a debtor or trustee to sell property of the bankruptcy estate "[can] bind the [Court]."[24] Therefore, until the Court considers and approves a sale, no sale is final and binding.

Even if the Court accepted GH's position and found that the MTD Order bound the Trustee to sell the Disputed Property to GH for $612,500.00 (with restrictive covenant), the Fifth Circuit has clearly held that "[a] sale of assets under § 363 . . . is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons." *In re Moore,* 608 F.3d at 263.

In evaluating GH's offer to purchase the Disputed Property, the MTD Order[25] states "that the purchase price paid by GH and accepted by the Debtor does not reflect or have any relationship to the [Disputed Property's] fair market value."[26] For that reason, the Court would be hard pressed

---

[24]*In Moore,* 608 F.3d at 266.

[25]The MTD Order was signed "Approved and Agreed" by the attorney for GH, Charles E. Hughes.

[26]*Agreed Order*, Case No. 1202009EE, Dkt. #158, p. 6, ¶ 6, Mar. 1, 2013.

to find that GH's offer of $612,500.00 (with restrictive covenant) is "the highest and best offer"[27] for the Disputed Property. Further, the Court cannot find that selling the Disputed Property to GH below the fair market value[28] would be a good business judgment or based on sound business reasons. Nor would such a sale be in the best interest of the bankruptcy estate, creditors, and equity holders. Consequently, even if the Trustee was bound to sell the Disputed Property to GH for $612,500.00 (with restrictive covenant), the Court would not approve such a sale because there is no "compelling and sound business justification"[29] for approving such a sale.

In sum, the Court is not bound to approve the offer of GH for the Disputed Property, and the Court declines to find that approving such an offer would meet the standards under § 363(b). The Court finds that the Trustee has noticed out a sale of the Disputed Property to GH for $612,500.00 (with restrictive covenant), and thus, the Trustee has complied with the MTD Order. Since nothing prohibits the Trustee from soliciting other offers on the Disputed Property, the Trustee may auction the Disputed Property and accept other bids. Therefore, the Objection of GH to the Sale Motion is not well taken and should be overruled.

### B. Should the Court Approve the Auction?

The Trustee asks the Court to grant him permission to auction the forty-four (44) acres owned by the bankruptcy estate. "[F]or the . . . trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling,

---

[27]*Id.* at 263.

[28]As noted later in this Opinion, the Trustee testified that the fair market value of the forty-four (44) acres was around four (4) dollars a square foot (Trial Transcript at 14-15) and that the GH offer of $612,500.00 would be around $1.70–$1.75 a square foot. (Trial Transcript at 18-19).

[29]*In re ASARCO,* 650 F.3d at 603.

or leasing the property outside the ordinary course of business. . . .Whether the proffered business justification is sufficient depends on the case."[30] "The business judgment standard in section 363 is flexible and encourages discretion."[31]

At trial, the Trustee testified that after speaking with several developers in Madison County, he estimated that the forty-four (44) acres had a fair market value of somewhere around four (4) dollars a square foot.[32] The Trustee also testified about the inquiries he has received on the property and described the major development that has occurred in the property surrounding the estate's forty-four (44) acres.[33]

As for the Disputed Property, the Trustee testified that the MTD Order states that the purchase price was below fair market value. By his calculations, the Trustee estimated that the GH offer would equal between $1.70 to $1.75 a square foot, plus GH would be getting a restrictive covenant on another tract of land for thirty-five (35) years.[34] The Trustee testified that the restrictive covenant would devalue the remaining property.[35]

"'[Considering] all salient factors pertaining to the proceeding and . . . to further the diverse interests of the debtor, creditors and equity holders, alike,'"[36] the Court finds that the Trustee has shown a business justification for conducting an auction of the estate's forty-four (44) acres. The

---

[30]*In re Cont'l Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986) (citations omitted).

[31]*ASARCO, Inc. v. Elliott Man. (In re ASARCO, L.L.C.),* 650 F.3d 593, 601 (5th Cir. 2011).

[32]Trial Transcript at 14-15.

[33]*Id.* at 16-17.

[34]*Id.* at 18-19.

[35]*Id.* at 18.

[36]*Cont'l Air Lines,* 780 F.2d at 1226 (quoting *In re Lionel,* 722 F.2d 1063, 1071 (2d Cir. 1983).

Page 16 of 18

Trustee has shown that the best way to maximize a recovery for the bankruptcy estate is to conduct an auction of the property. The Court finds that an auction is in the best interest of the bankruptcy estate, creditors, and equity holders. Consequently, the Sale Motion should be granted and the Trustee is authorized to conduct an auction of the estate's forty-four (44) acres.

## CONCLUSION

GH argues that the MTD Order bound the Trustee to sell the Disputed Property to it for $612,500.00 (with restrictive covenant), and that therefore, the Court is bound to approve the sale to GH for $612,500.00 (with restrictive covenant). If the Court adopted GH's position, the approval process under Federal Rule of Bankruptcy Procedure 6004(a) would be meaningless. *Moore*, 608 F.3d at 266.

The Court finds that the Trustee has complied with the MTD Order and noticed out GH's offer to purchase the Disputed Property for $612,500.00 (with restrictive covenant). The Court further finds that the Trustee is not bound to sell the Disputed Property to GH for $612,500.00 (with restrictive covenant). Therefore, the Objection of GH should be overruled.

The Sale Motion requests permission from the Court to auction the Debtor's real property free and clear of liens to the highest bidder, with the opening bid on Tract 4 (Disputed Property) to be GH's offer of $612,500.00 (with restrictive covenant). The Court finds that the Trustee has articulated a sound business justification for conducting the auction of the Disputed Property and the other property of the estate. Therefore, the Court should grant the Sale Motion.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.[37]

---

[37]A considerable part of GH's brief is dedicated to cases which hold that the settlement between the parties should be enforced and should bind the Trustee because all parties/creditors were noticed

A separate order consistent with this Opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**##END OF FINDINGS##**

---

of the motion to dismiss. The settlement was reached between all of the major "players" in the bankruptcy case, and therefore, GH argues that the requirement to notice out the settlement under Fed. R. Bankr. P. 9019 was satisfied, and the agreement is binding. The Court does not find this argument applicable. As discussed, the sale of property of a bankruptcy estate is controlled by § 363 and Fed. R. Bankr. P. 6004(a) and not Fed. R. Bankr. P. 9019.