SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: October 28, 2019**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

VCR I, LLC,                                              CASE NO. 12-02009-NPO

DEBTOR.                                                          CHAPTER 7

### MEMORANDUM OPINION AND ORDER GRANTING
### MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS,
### <u>INTEREST, ENCUMBRANCES AND CLAIMS—CHURCH ROAD PROPERTY</u>

This matter came before the Court for hearing on October 8, 2019 (the "Hearing"), on the

Motion to Sell Property Free and Clear of Liens, Interest, Encumbrances and Claims — Church

Road Property (the "Motion for Sale") (Dkt. 786)[1] filed by Derek A. Henderson, the chapter 7

trustee (the "Trustee") for the VCR I, LLC bankruptcy estate (the "Bankruptcy Estate"); Dr.

Pradeep Rai's Response to Trustee's Motion to Sell Property Free and Clear of Liens, Interests,

Encumbrances and Claims — Church Road Property (the "Objection") (Dkt. 791) filed by Dr.

Pradeep Rai ("Rai"); Exhibit A to Dkt. No. 791 (the "Proposed Asset Purchase Agreement") (Dkt.

---

[1] Hereinafter, the citations to the docket in the above-referenced bankruptcy case (the "Bankruptcy Case") are "(Dkt. ___)"; citations to the docket in the first appeal to the U.S. District Court for the Southern District of Mississippi (the "District Court") in No. 3:17-CV-00820-CWR-LRA are "(1st App. Dkt. ___)"; and citations to the docket in the second appeal to the District Court in No. 3:18-CV-00420-LG-KHW are "(2d App. Dkt. ___)".

797) filed by Rai; and Exhibit B to Dkt. No. 791 (the "U.S. Bank Letter") (Dkt. 798) filed by Rai in the Bankruptcy Case.  At the Hearing, Douglas C. Noble represented the Trustee, John D. Moore ("Moore") represented Rai, and James McCullough, II represented the Catholic Diocese of Jackson as the potential purchaser (the "Potential Purchaser").  During the Hearing, the Trustee introduced into evidence three (3) exhibits and the Potential Purchaser introduced into evidence two (2) exhibits.[2]  Pam Minninger ("Minninger") and the Trustee testified as witnesses at the Hearing.  Rai did not appear at the Hearing.  The Court approved the Motion for Sale from the bench, and this Opinion memorializes and supplements the Court's bench ruling.

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Notice of the Hearing was proper under the circumstances.

## Facts

This Bankruptcy Case was initially commenced as a chapter 11 voluntary petition (the "Petition") (Dkt. 1) on June 21, 2012 but was later converted to a chapter 7 case.  (Dkt. 195).  The Bankruptcy Case has a complex docket amassed over nearly seven (7) years and has generated two appeals before the U.S. Court of Appeals for the Fifth Circuit.  Further complicating this contested matter, the Bankruptcy Case was reassigned from the Honorable Edward Ellington to the above-signed bankruptcy judge on December 1, 2018.  As background, the Court will provide an overview of the facts and procedural history leading up to the Hearing.

---

[2] Hereinafter, exhibits introduced into evidence at the Hearing are cited as: (1) exhibits introduced by the Trustee "(Trustee Ex. ___)"; and (2) exhibits introduced by the Potential Purchaser "(Potential Purchaser Ex. ___)".

A.      **Pre-Petition Facts**

VCR I, LLC is a Mississippi limited liability company owned and managed by Rai and his family.  (Dkt. 116 at 8).  VCR I, LLC was formed in 2004 for the purpose of developing and marketing for sale approximately forty-four (44) acres located at the intersection of Interstate 55 and Gluckstadt Road in Madison County, Mississippi (the "Gluckstadt Property").  On February 20, 2008, VCR I, LLC borrowed $984,450.96 from BankPlus.[3]  The loan was secured by a deed of trust on the Gluckstadt Property in favor of BankPlus.  BankPlus' lien constituted a first lien on the Gluckstadt Property.

Bounds Realty sued VCR I, LLC in the Circuit Court of Madison County, Mississippi to recover unpaid real estate commissions.  On January 9, 2012, the circuit court entered summary judgment awarding Bounds Realty $235,000.00 plus interest and attorney's fees (the "Bounds Judgment").  The Bounds Judgment was enrolled in the judgment roll of Madison County, Mississippi, on January 10, 2012.  VCR I, LLC appealed the Bounds Judgment to the Mississippi Supreme Court.

On May 2, 2012, the Mississippi Transportation Commission ("MTC")[4] filed a complaint against VCR I, LLC in Madison County, Mississippi, in the Special Court of Eminent Domain (the "Eminent Domain Action") seeking to acquire approximately 12.97 acres of the Gluckstadt Property.  This property was subject to BankPlus' deed of trust.  MTC appraised the 12.97 acre tract at $2,209,100.00.

---

[3] Some of the following facts are found in the Agreed Order Stipulating to Facts (the "Stipulation") (Dkt. 156) entered on February 25, 2013, prior to a hearing on BankPlus' Motion for Relief from Automatic Stay (Dkt. 21).  The Stipulation was agreed to by BankPlus, the Debtor-in-Possession, and Mark S. Bounds Realty Partners, Inc. ("Bounds Realty").

[4] The MTC is a corporate entity of the State of Mississippi and holds the right to exercise the power of eminent domain by virtue of MISS. CODE ANN. §§ 65-1-1, *et seq.*

When Bounds Realty was unable to collect the Bounds Judgment against VCR I, LLC, Bounds Realty filed a Notice of Sheriff's Sale on May 22, 2012. A sheriff's sale of all the Debtor's property was scheduled for June 21, 2012, between the hours of 11:00 A.M. and 4:00 P.M.

**B.      Bankruptcy Petition**

Minutes before the commencement of the sheriff's sale on June 21, 2012, VCR I, LLC filed the Petition. (Dkt. 1).[5] VCR I, LLC thereafter continued the operation of its business as a debtor-in-possession ("DIP") pursuant to 11 U.S.C. § 1107(a). The sheriff's sale was not conducted on June 21, 2012 as scheduled.

Even though the automatic stay went into effect pursuant to 11 U.S.C. § 362 once the Petition was filed, Bounds Realty did not seek relief from the automatic stay before it instructed the sheriff to proceed with the sale on June 22, 2012. Gluckstadt Holdings, LLC ("Gluckstadt Holdings") appeared at the sheriff's sale on June 22, 2012 and bid $2,500,000.00 for all forty-four (44) acres of the Gluckstadt Property. Gluckstadt Holdings' bid was the only bid received, and Bounds Realty accepted the bid. No funds were exchanged, and no deed to the Gluckstadt Property was given to Gluckstadt Holdings.

**C.      Bankruptcy Proceeding**

In the Bankruptcy Case, BankPlus filed a Motion for Relief from Automatic Stay (the "BankPlus Motion") (Dkt. 21) on July 11, 2012, seeking to terminate the automatic stay as to the Gluckstadt Property. Bounds Realty filed a Joinder in Motion for Relief from Automatic Stay (Dkt. 31) on July 18, 2012. Bounds Realty also filed a Motion to Dismiss (the "Bounds Realty Motion") (Dkt. 26), arguing that the Bankruptcy Case was a single-asset case and, therefore, was filed in bad faith.

---

[5] The Petition was filed at 10:46 A.M. on June 21, 2012. (Dkt. 1).

On August 20, 2012, MTC filed a Motion to Lift Automatic Stay and Abandonment from Bankruptcy Estate (the "MTC Motion") (Dkt. 67). MTC asked the Court to terminate the stay so that it could proceed with the Eminent Domain Action as to the 12.97 acres of the Gluckstadt Property. A hearing was set for January 22, 2013 on the BankPlus Motion, the MTC Motion, and the Bounds Realty Motion. Gluckstadt Holdings appeared at the hearing and expressed its interest in purchasing part of the Gluckstadt Property. Gluckstadt Holdings engaged in negotiations with the DIP, BankPlus, Bounds Realty, and MTC, and the parties agreed to settle all of the matters set for hearing. As part of the global settlement, the DIP agreed to sell part of the Gluckstadt Property to Gluckstadt Holdings. The settlement was dictated into the record, and, thereafter, orders were submitted memorializing the settlement. Notice of the settlement agreement was not provided to all creditors as required by Federal Rule of Bankruptcy Procedure 9019.

On March 1, 2013, the Court entered the Agreed Order (the "Agreed Order") (Dkt. 158), memorializing the terms of the settlement reached between the DIP, Bounds Realty, Gluckstadt Holdings, BankPlus, and MTC on January 22, 2013. The Agreed Order terminated the stay to allow MTC to proceed with the Eminent Domain Action with MTC agreeing to pay $2,011,700.00 to the Bankruptcy Estate for payment in full of the secured claim of BankPlus and Bounds Realty. The provision of the Agreed Order that later generated an appeal by Gluckstadt Holdings is found in paragraph 4(d):

> The Debtor agrees to sell to Gluckstadt Holdings, LLC ("GH") good fee simple marketable title to 7.65 acres of real property located in the Northwest quadrant of the intersection of Interstate Highway 55 and Gluckstadt Road in Madison County, Mississippi, free and clear of all liens, encumbrances and title defects and objections. . . . The purchase price for the real property the Debtor will accept, and that GH will pay, is $612,500.00. The Debtor shall file and notice a motion for authority to sell the real property, free and clear of all liens, claims and interests, to GH, for $612,500.00, as soon as possible, with the first priority lien of BankPlus (the "Bank") and the second priority lien of Bounds Realty attaching to the proceeds . . . The Debtor further agrees to provide title restrictive covenants on a

separate 5.91 acre tract, which covenants shall run with the land benefiting *(sic)* said 7.65 acre parcel and burdening said 5.91 acre parcel. . . . The restrictions will prohibit said 5.91 acre parcel from being used as a motor fuel sales facility and/or a convenience store or for the sale of merchandise in competition with the sale of such goods as may be sold by or from a convenience store nor may a motor fuel sales facility or convenience store be constructed upon said 5.91 acre parcel for a period of 35 years from and after the date of the sale to GH.

(Dkt. 158 at 2-4).

In summary, the DIP agreed in paragraph 4(d) of the Agreed Order to sell 7.65 acres to Gluckstadt Holdings for $612,500.00 and to enter into a restrictive covenant on an additional 5.91 acres adjacent to the 7.65 acres. The restrictive covenant would prohibit a motor fuel sales facility and/or a convenience store from being built on the 5.91 acres for a period of 35 years. In paragraph 6 of the Agreed Order, the parties acknowledged that the sale of the 7.65 acres was not an arms-length transaction and that the purchase price of $612,500.00 "does not reflect or have any relationship to the property's fair market value." (Dkt. 158 at 6). The Agreed Order stated that the DIP would file a motion seeking approval from the Court to sell the 7.65 acres to Gluckstadt Holdings and would provide notice of the motion to all creditors. The DIP, however, never filed the motion to sell.

Because the DIP, *inter alia*, allegedly failed to open a DIP bank account in which to deposit the funds paid by MTC to the Bankruptcy Estate (Dkt. 172), the Court entered the Order Granting United States Trustee's Second Motion to Convert (Dkt. 195) on October 18, 2013. The Bankruptcy case was converted to a chapter 7 case, and the DIP ceased to exist.[6] Shortly thereafter, the Trustee was appointed to administer the Bankruptcy Estate.

On January 17, 2014, Gluckstadt Holdings filed a Motion to Compel Compliance with the Agreed Order (Dkt. 242), asking the Court to require the Trustee to file a motion to sell the 7.65

---

[6] From this point forward, VCR I, LLC is referred to as the "Debtor."

acres to Gluckstadt Holdings for $612,500.00. The Trustee and Gluckstadt Holdings eventually reached an agreement, and the Order Granting in [*sic*] Motion to Compel in Part (the "Order to Compel") (Dkt. 509) was entered on April 7, 2016. In the Order to Compel, the parties agreed that the Trustee would file a motion to sell the Gluckstadt Property pursuant to 11 U.S.C. § 363 and would provide notice of the sale motion to all interested parties as required by the Federal Rules of Bankruptcy Procedure. The motion would include the sale of the 7.65 acres in which Gluckstadt Holdings asserted an interest based on the Agreed Order.

In the Eminent Domain Action, a jury on April 30, 2015, found that the Debtor would "be damaged by the acquisition of their property for public use, in the sum of $3,100,303." (Dkt. 522). MTC appealed this verdict, but the parties eventually settled, and the appeal was dismissed. The parties agreed that a just compensation for the taking of the Debtor's 12.99 acres was $3,261,700.00, including interests, costs, fees, and expenses. (Dkt. 522).

## D.     Gluckstadt Property

On November 4, 2016, the Trustee filed a Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property (Dkt. 546) (the "Motion to Approve Auction"). In the Motion to Approve Auction, the Trustee requested that the Court authorize a sale by auction of four (4) separate tracts of the Gluckstadt Property. The Trustee included the 7.65 acres in dispute from the Agreed Order in the auction sale as "Tract 4."[7]

In the Motion to Approve Auction, the Trustee acknowledges that while the Bankruptcy Case was pending as a chapter 11 proceeding, Gluckstadt Holdings and the DIP entered into the

---

[7] The .45 acre tract of land was excluded from the four (4) tracts referenced in the Motion to Approve Auction.

Agreed Order in which the DIP agreed to sell Tract 4 to Gluckstadt Holdings for $612,500.00. The Trustee, however, did not support the sale to Gluckstadt Holdings "without an open bid process." The opening bid for Tract 4 would be $612,500.00, but the Trustee "is under no obligation to sell to GH unless the Opening Bid of GH is the highest and best bid. Nothing prevents GH from increasing its bid and participating in the auction process." (Dkt. 546).

On November 28, 2016, Gluckstadt Holdings filed its Response and Objection of Gluckstadt Holdings, LLC to Trustee's Motion to Approve Auction and for Authority to Sell Assets Free and Clear of Liens, Interest, Encumbrances and Claims - Real Property (the "Objection to Sale") (Dkt. 558). In its Objection to Sale, Gluckstadt Holdings alleged that the Agreed Order bound the Trustee, as the successor in interest to the DIP, to file a motion to sell Tract 4 to Gluckstadt Holdings for $612,500.00, subject only to the objection of creditors who did not participate in the settlement agreement. In other words, Gluckstadt Holdings argued that the Trustee could not auction Tract 4 to the highest bidder.

The Motion to Approve Auction and the Objection to Sale were heard on April 26, 2017. On September 29, 2017, the Court overruled the Objection to Sale and granted the Motion to Approve Auction. (Dkt. 625). The Court found that the Trustee fully complied with the Agreed Order by filing the Motion to Approve Auction, and even if he had not complied, the sale of the Gluckstadt Property under 11 U.S.C. § 363 would be subject to court approval. In that regard, the Court further found that the Trustee established a business justification for conducting an auction of the Gluckstadt Property. On October 13, 2017, Gluckstadt Holdings filed a Notice of Appeal (the "First Appeal") (Dkt. 635) to the District Court.

E.     **First Appeal**

On May 7, 2018, Gluckstadt Holdings filed an Emergency Motion for Stay Pending Appeal (the "Emergency Motion") (1st App. Dkt. 10) in the First Appeal.  The District Court denied the Emergency Motion and affirmed the judgment of this Court granting the Motion to Approve Auction (the "District Court's Judgment") (1st App. Dkt. 11-12).  On May 16, 2018, Gluckstadt Holdings filed a Notice of Appeal (1st App. Dkt. 13) to the United States Court of Appeals for the Fifth Circuit in 18-60368.  On appeal, the Fifth Circuit affirmed the District Court's judgment, affirming this Court's decision granting the Motion to Approve Auction.  *In re VCR I, L.L.C.*, 922 F.3d 323, 328 (5th Cir. 2019).

The Fifth Circuit noted that it had discussed previously the rules that apply to the sale of a debtor's property and the trustee's duties with respect to such a sale in *The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253 (5th Cir. 2010).  *See In re VCR 1*, 922 F.3d at 326.  Specifically, when a settlement agreement in a bankruptcy proceeding involves the sale of the debtor's property, the agreement triggers the requirements of 11 U.S.C. § 363, and such a sale "requires notice and a hearing and is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."  *In re Moore*, 608 F.3d at 263. In *VCR I*, the Fifth Circuit concluded that Gluckstadt Holdings "has fallen far short: it does not address our precedent in *In re Moore*, the requirements under § 363(b) for the sale of a debtor's assets outside the ordinary course of business, or the Trustee's fiduciary duty to maximize the assets of the bankruptcy estate."  *In re VCR 1*, 922 F.3d at 328.

F.     **Auction**

During the pendency of the First Appeal, the Court entered its Order Granting Motion to Employ Auctioneer and Approval of Contract (Dkt. 675) on January 22, 2018.  On March 19,

2018, the Trustee filed a Motion for Supplemental Order Confirming Sale (the "Motion to Confirm Sale") (Dkt. 680). On May 22, 2018, the Trustee along with Taylor Auction and Realty, Inc. (the "Auctioneer") conducted an auction of the four (4) tracts of the Gluckstadt Property.

On May 23, 2018, the Trustee filed the Auction Report (the "Auction Report") (Dkt. 699), providing a breakdown of the bid price for each of the four (4) tracts. The Auction Report states that the Trustee held the auction on May 22, 2018 and sold the Gluckstadt Property for a total of $6,750,000.00.[8] (Dkt. 699). The final bid for Tract 4 was $2,325,000.00, significantly more than the $612,500.00 that Gluckstadt Holdings had agreed to pay and the amount that was bid for any of the other three (3) tracts.

On May 28, 2018, Rai filed an Objection to Motion for Supplemental Order Confirming Sale and Objection to Fees Proposed to be Paid to Auctioneer (the "Objection to Sale") (Dkt. 700). Rai alleged that the "fees proposed to be paid to the auctioneer are unreasonably high for property of this type and do not comply with the US Bankruptcy Code." (Dkt. 700 at 1). Rai also alleged that the Gluckstadt Property was sold for an "unreasonably low price." (Dkt. 700 at 2). The Court held a hearing on the Motion to Confirm Sale and the Objection to Sale on June 1, 2018. At the June 1, 2018 hearing, the Trustee; the Auctioneer; a representative of the successful joint bidders, May-Hawk, LLC ("May-Hawk") and Phoenix Development Co., LLC ("Phoenix"); and Rai's counsel appeared. Based on the testimony and evidence presented at the hearing, the Court granted

---

[8] The sale prices are as follows:

| Tract 1 | $ 1,425,000.00 |
| Tract 2 | $ 1,050,000.00 |
| Tract 3 | $ 1,950,000.00 |
| Tract 4 | $ 2,325,000.00 |

(Dkt. 708 at 2).

the Motion to Confirm Sale (Dkt. 708) finding that May-Hawk and Phoenix were good faith purchasers pursuant to 11 U.S.C. § 363(m).

## G.     Second Appeal

On June 27, 2018, Rai filed a Notice of Appeal (the "Second Appeal") (Dkt. 713) to the District Court.  On appeal, Rai contended that the Court should not have confirmed the sale of the Gluckstadt Property because: (1) May-Hawk and Phoenix were not good faith purchasers within the meaning of 11  U.S.C. § 363(m), (2) the auction of the Gluckstadt Property was tainted by collusion among the bidders, and (3) the auction was inadequately marketed to achieve the highest possible bid for the Gluckstadt Property.  (2d App. Dkt. 10 at 3).

Upholding the decision of this Court, the District Court found that multiple realtors from a single real estate company representing competing bidders did not, in and of itself, suggest collusion between the bidding parties.  (2d App. Dkt. 10 at 5).  The District Court further found that the evidence at the hearing demonstrated that there were two rounds of bidding to maintain a competitive and active auction.  (2d App. Dkt. 10 at 5).  Moreover, despite the limited traffic on the digital marketing sites, representatives of twenty-four (24) registered bidders were present at the auction in what became a standing-room only venue.  (2d App. Dkt. 10 at 6).  Noting that the bidding at the auction resulted in a higher-than-anticipated sale price, the District Court affirmed this Court's decision on February 12, 2019.  (2d App. Dkt. 10).  Rai filed a Notice of Appeal to the Fifth Circuit on March 14, 2019.  (2d App. Dkt. 12).  Oral arguments are scheduled before the Fifth Circuit the week of November 4, 2019.

## H.     .45 Acre Tract

In 2010, Madison County, Mississippi ("Madison County") was in the process of constructing a roadway known as the Calhoun Station Parkway (the "Parkway") (Dkt. 653 at 1).

A portion of the Parkway cuts through 5.35 acres of the Gluckstadt Property. (Dkt. 653 at 2). On May 9, 2017, the Trustee, on behalf of the bankruptcy estate, filed an adversary complaint (Adv. Proc. No. 17-00024-EE, Dkt. 1) seeking a declaratory judgment and injunctive relief against Madison County (the "Adversary") (Adv. Proc. No. 17-00024-EE) to settle a discrepancy regarding 5.8 acres of the Gluckstadt Property that appeared to be subject to two conflicting lease agreements entered into by the Debtor and Madison County. The 5.8 acres form part of the Gluckstadt Property but are not part of the four (4) tracts of land sold to May-Hawk and Phoenix. The Adversary involved a complex factual dispute over several years. The Trustee and Madison County entered into a settlement agreement, and the facts relevant to the present dispute are as follows:

1.      On September 7, 2010, the Debtor and Madison County executed a Lease Agreement with Option for Sale and Purchase of Real Property (the "First Lease Agreement"). The First Lease Agreement involved 5.8 acres, consisting of a 5.35 acre tract of land leased for $765,500.00 and a .45 acre tract (the ".45 Acre Tract") leased for $45,000.00. (Dkt. 666 at 2). The First Lease Agreement was recorded in the land records of Madison County, Mississippi on December 10, 2010 in Book 2619 at Page 147 as Instrument No. 636966. (Dkt. 666 at 5).

2.      A second lease agreement executed on September 30, 2010 (the "Second Lease Agreement") between the Debtor and Madison County also exists. (Dkt. 666 at 5). The First Lease Agreement and Second Lease Agreement are almost the same except the Second Lease Agreement involved only the 5.35 acre tract of land and did not mention the .45 Acre Tract. The disputes surrounding the First Lease Agreement and Second Lease Agreement were resolved through a settlement agreement in the Adversary (the "Madison County Settlement Agreement")

(Adv. Proc. No. 17-00024-EE, Dkt. 31), which the Court approved on December 20, 2017 (Dkt. 666).

3.      In relevant part, the Madison County Settlement Agreement states:

(a)      The $711,500.03 previously paid by Madison County was for the purchase of the 5.35 acre tract of land where the Parkway sits;

(b)      Madison County executed a deed to the Bankruptcy Estate for the .45 Acre Tract and for an additional .384 acres adjacent to and west of the .45 Acre Tract (the "Settlement Tract").[9]  The .45 Acre Tract and the Settlement Tract are located on and adjacent to Church Road in Madison County, Mississippi.

## I.      Motion for Sale

On August 22, 2019, the Trustee filed the Motion for Sale.  (Dkt. 786).  The Trustee seeks to sell the .45 Acre Tract and the additional Settlement Tract (collectively, with the .45 Acre Tract the "Church Road Property")[10] to St. Joseph Catholic Church (the "Church") through the Bishop of the Catholic Diocese of Jackson.  (Dkt. 786).  The Trustee proposes a purchase price of $40,700.00[11] based on the July 2017 appraisal of the .45 Acre Tract.  (Dkt. 786 at 2). In the Objection, Rai argues that the Motion for Sale should be stayed pending resolution of the Second Appeal and that the Trustee did not market the Church Road Property.  He offers to purchase the

---

[9] The parcel consisting of "the road directly west of the .45 Acre Tract of Disputed Property including the most southern part of Church Road" is approximately .384 acres.  (Dkt. 786 at 2).

[10] The .45 Acre Tract is approximately 19,602 square feet and the Settlement Tract is approximately 16,712.42 square feet.  (Dkt. 786).

[11] The July 2017 appraisal valued the .45 Acre Tract at approximately $1.12 per square foot.  (Dkt. 786).  Combined, the value of the .45 Acre Tract (19,602 square feet x $1.12 = $21,954.24) and the Settlement Tract (16,712.42 square feet x $1.12 = $18,717.91) is $40,672.15.

Church Road Property "for more then what is being offered" but does not disclose the amount in the Objection.

Prior to the Hearing, the Trustee asked Rai to provide proof of funds through either a certified check or other means after he offered to purchase the property in his Objection. (2:29:00-2:29:36).[12]  The day before the Hearing, Rai filed the Proposed Asset Purchase Agreement and the U.S. Bank Letter, neither of which was introduced into evidence at the Hearing. (2:14:15-2:15:36). In the Proposed Asset Purchase Agreement, Rai offered to purchase the Church Road Property for $41,700.00, which is $1,000.00 more than the offer of the Potential Purchaser, but Rai did not present any evidence of an intention to follow through with the purchase at the Hearing.  Indeed, Moore clarified at the Hearing that Rai is not asking the Court to confirm the sale to Rai. (2:30:12-2:30:33).  The Potential Purchaser appeared at the Hearing with a non-certified check[13] in the full amount of the purchase price and an authorized agent, Minninger, to complete the purchase if the Court granted the Motion for Sale. (2:36:38-2:36:50).  Moore argued that the 2017 appraisal of the .45 Acre Tract at $1.12 a square foot, in light of the sale of the Gluckstadt Property for almost $6.00 a square foot, devalued the actual, current value of the Church Road Property and suggested a price of $216,000.00. (2:31:40-2:32:05).  Moore did not present any evidence to support Rai's position, and Rai's offer of $41,700.00 is inconsistent with his belief of the higher value.  In that regard, none of the potential buyers from the auction of the four (4) tracts of the Gluckstadt

---

[12] The Hearing was not transcribed.  References to the Hearing are made to the time-stamped recording.

[13] A letter to Bishop Reverend Joseph Kopacz from Pam Minninger with attachments (the "Bishop's Letter") was entered into evidence without objection at the Hearing.  (Potential Purchaser Ex. 2).  The Bishop's letter authorizes the purchase of the Church Road Property by the Church, through the Potential Purchaser, in the amount of $40,700.00. (*Id.*).  The annotations on the letter confirm "More than adequate savings." (*Id.*).

Property and no other third-party showed any interest or contacted the Trustee about the Church Road Property.  (2:35:25-2:35:32).

At the Hearing, the Trustee testified and presented evidence to explain the unusual circumstances surrounding the Church Road Property.  The Trustee testified that the Church Road Property is the last remaining asset of a nearly seven-year bankruptcy proceeding.  (2:11:10-2:11:22).  From the Trustee's investigation, the Trustee believes that the Potential Purchaser is "the only legitimate buyer for a piece of property that has no commercial, residential, or other value whatsoever." (2:14:15-2:15:36).  Trustee's Exhibit 1, a land survey prepared by McMaster & Associates, Inc. (the "Land Survey"), provides a visual of the location of the four (4) tracts of the Gluckstadt Property, which were the subject of the First Appeal and remains the subject of the pending Second Appeal, and their proximity to the Church Road Property.  (Trustee Ex. 1). Trustee's Exhibit 2, a magnified version of a portion of the Land Survey, highlights the .45 Acre Tract after the Eminent Domain Action.  (Trustee Ex. 2).  Trustee's Exhibit 3, attached as Exhibit "A" to the Motion for Sale (the "Detailed Survey") (Dkt. 786), illustrates how the .45 Acre Tract and the Settlement Tract combine to create the triangular-shaped Church Road Property.  (Trustee Ex. 3).

At the time Minninger first contacted the Trustee about the Church Road Property in 2012, the Trustee was not prepared to offer it for sale.  (2:53:12-2:53:38).  Once the Trustee settled the lease disputes with Madison County, the Trustee re-started negotiations with Minninger.  (3:03:32-3:04:16).  The Detailed Survey shows how the .45 Acre Tract and the Settlement Tract come together to form a piece of property that has a more natural configuration.  (Trustee Ex. 3).   At this point, The Trustee was never contacted by any other interested parties regarding the Church Road Property and did not believe that he could market the property at any competitive value for

the benefit of the Bankruptcy Estate because of the size, setbacks, and access issues.  (2:25:15-2:25:40).  The Trustee also testified to the difficulties accessing the Church Road Property because (1) the Potential Purchaser owns one-half of Church Road with no easements or agreements in place and (2) the feasibility of gaining access to the Church Road Property from the Parkway is unclear.  (2:26:00-2:26:26).

In support of the Motion for Sale, counsel for the Potential Purchaser called Minninger to testify.  Minninger is employed at the Church[14] as the Lay Ecclesial Minister (the "Lay Minister").  (2:38:15-2:38:21).  As the Lay Minister, Minninger overseas the administration, education, and outreach of the Church, as well as the Church property and buildings.  (2:38:45-2:38:57).  In 2010 or 2011, Minninger first inquired about the Church Road Property.  (2:40:30-2:40:38).  At the time, Minninger contacted Dr. and Mrs. Rai, Rai's parents, to discuss possibly purchasing the "uneconomic remnant" of the Eminent Domain Action, which was just the .45 Acre Tract.  (2:43:30-2:43:52).  Dr. and Mrs. Rai proposed a price of $156,000.00 to which Minninger, on behalf of the Church, declined to negotiate.  (2:43:30-2:43:52).  The Church wanted the property "to control the ingress and egress off of the Church Road area," to "serve as additional overflow parking when [the Church] need[s]," to "enhance [the Church] campus visually, . . . and to protect [the Church] sight wise on whatever would be on the other side of [the centerline of Church Road]."  (2:51:30-2:51:56).  She explained that drivers, without realizing that Church Road dead ends into the Church's property, have ignored the cut off to the Parkway and continued driving south on Church Road. This vehicular traffic at high rates of speed on Church Road has become a safety issue for members and employees of the Church because of the close location of the Church

---

[14] While the two parties may be used interchangeably, the Potential Purchaser is the Bishop of the Catholic Diocese of Jackson, Mississippi, purchasing the property for the benefit of the Church and its members.

and other buildings to Church Road.  One such incident occurred during the Church's summer vacation Bible school when small children were playing outside.  She further explained that because the Church owns only the property to the west of the centerline of Church Road, it cannot close access to Church Road to prevent such incidents from happening in the future.

As part of the Church's ongoing interest in the property, Minninger researched the zoning and building requirements for Madison County, Mississippi.  (2:44:30-2:45:15).  Based on her research, Minninger felt confident that the Church would be protected from commercial development on the Church Road Property because of the zoning regulations but the safety issues remained.  (2:44:40-2:45:15).  Minninger testified that the tract is zoned C1A, which requires a thirty-five (35) foot setback from the edge of the property line on the "Parkway and Church Road side."[15]  (2:46:30-2:47:13).  On the side of the property that meets the Church's property, which is zoned R1, there is a fifty (50) foot setback requirement.  (2:49:00-2:49:33).  Additionally, the first fifteen (15) feet of the setback must be "green space with no parking on it."  (3:07:20-3:07:25).  After examining the Land Survey, it appears that the Church Road Property is approximately one hundred and fifty (150) feet at its widest point, and, given its triangular shape, the Settlement Tract portion of the Church Road Property is unusable due to these setbacks.  (Trustee Ex. 1).

As a result, the Church Road Property is land-locked; the Debtor owns half of Church Road and the Church owns the other half of Church Road.  There are no agreements or easements in place that would allow another buyer access to the Church Road Property.  (2:25:30-2:25:50).  Nevertheless, Moore argued at the Hearing that an agreement, access from the Parkway, or a petition to a state court for an easement by necessity are all feasible ways of creating a point of

---

[15] Church Road continues straight to the cul-de-sac, which the Church refers to as the Church Road Extension.  Church Road also turns to connect to the Parkway.

ingress and egress.  (2:36:15-2:36:32).  Moore did not present any testimony or evidence on the feasibility of the potential resolutions, the costs of such potential resolutions, or their impact on the value of the Church Road Property.

On cross-examination of Minninger, Moore used the "blue part of his pen" to illustrate on the Detailed Survey the possibility of erecting a structure at least the size of Minninger's office building on the Church Road Property.  (3:06:30-3:07:07).  Minninger was unsure of the plausibility of such construction and also testified that other zoning requirements do not allow the building to be more than fifty percent (50%) of the lot.  (3:07:30-3:08:00).  Rai did not present any other evidence for the Court to consider.

## Discussion

The grounds for objecting to the Motion for Sale of the Church Road Property presented in the Objection and at the Hearing are unclear and unsupported by evidence.  First, it seems Rai wishes to stay the Motion for Sale during the pendency of the Second Appeal.  In the Objection, Rai predicts that "if Dr. Rai is successful on the appeal, then, potentially, the entire real property of the estate will need to be re-marketed for sale or, as Dr. Rai has requested, distributed in kind to the equity holders of VCR."  (Bankr. Dkt. 791 at 1).  Consistent with his ongoing efforts to liquidate property of the Bankruptcy Estate and that this is the final asset to administer, the Trustee filed the Motion for Sale after assessing the facts and circumstances surrounding the Church Road Property.  If a stay was applicable to the Church Road Property through its relation to the Gluckstadt Properties, it is too late in the appellate process for the Court to grant the relief sought

by Rai. *Culwell v. Tex. Equip. Co., Inc. (In re Tex. Equip. Co., Inc.)*, 283 B.R. 222, 230-31 (Bankr. N.D. Tex. 2002).

Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007") governs the stay of a bankruptcy judgment, order, or decree pending an appeal to the district court.[16]  FED. R. BANKR. P. 8007.  But any stay granted by the bankruptcy court under Rule 8007 expires upon entry of a judgment by the district court.  *See* 10 COLLIER ON BANKRUPTCY ¶ 8007.11 (16th ed. 2019). At that point, a stay pending an appeal of an affirmed bankruptcy judgment, order, or decree to a court of appeals must be sought from the district court under Rule 8025 of the Federal Rules of Bankruptcy Procedure ("Rule 8025") or from the court of appeals under Rule 8 of the Federal Rules of Appellate Procedure ("Rule 8").  The termination of the bankruptcy court's power to grant a stay is necessary to prevent any interference with the authority vested in the district court under Rule 8025, or the court of appeals under Rule 8 to enter a stay.

Rai did not seek a stay of the District Court's Judgment from the District Court under Rule 8007 or from the Fifth Circuit under Rule 8.  Moreover, this Court lacks power to stay the Final Judgment under Rule 8007 at this late juncture when the appeal of the District Court's Judgment presently is pending before the Fifth Circuit.  Moreover, the Church Road Property at issue in the Motion for Sale is separate from the four (4) tracts of the Gluckstadt Property at issue pending before the Fifth Circuit.

Second, Rai objects to the Motion for Sale on the grounds that the "property proposed to be sold has not been marketed," and Rai "offers" to purchase the property.  (Dkt. 791 at 1).  Under 11 U.S.C. § 363 the trustee, after notice and a hearing, may sell property of the estate.  11 U.S.C.

---

[16] References to the bankruptcy appellate panel in this discussion are omitted since the Fifth Circuit has not authorized appeals to such panels.  28 U.S.C. § 158(b).

§ 363(b)(1). A sale of property is subject to court approval and must be "supported by an articulated business justification, good business judgment, or sound business reasons." *In re Moore*, 608 F.3d at 263. The trustee has the duty to maximize the value of the estate through not just the sale but also the sale process. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985).

Generally, a trustee must demonstrate that the proposed sale price is the highest and best offer; however, a bankruptcy court may accept a lower bid in the presence of sound business reasons. 3 COLLIER ON BANKRUPTCY ¶ 363.02 [4] (16th ed. 2019); *see Culp v. Stanziale (In re Culp)*, 545 B.R. 827, 844 (D. Del. 2016); *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("[i]n evaluating whether a sound business purpose justifies the use, sale, or lease [of estate] property . . . courts consider a variety of factors, which essentially represent a 'business judgment test.'" (citations omitted)). Recent cases focus on the exercise of sound business judgment and reasoning. *Id.* The court should review the trustee's actions to determine independently whether the business judgment is reasonable and justifies the trustee's sale and its terms. *Id.* A determination cannot be made solely on the expectation that the Trustee should sell to the highest bidder at an auction, there may be sound business reason to accept a lower bid, particularly if the sale is a negotiated sale. *Id.*

Here, the Trustee and the Potential Purchaser presented substantial evidence to indicate that the decision to sell the Church Road Property to the Potential Purchaser is a sound business decision supported by good business judgment and business justification. Rai did not present any evidence at the Hearing or in his Objection to challenge the evidence provided by the Trustee and Potential Purchaser about the condition of the Church Road Property, the arms-length negotiations

between the Trustee and the Potential Purchaser over multiple years beginning in 2012, and the extenuating circumstances that demonstrate that the sale of the Church Road Property for $40,700.00 to the Potential Purchaser is based on a sound business decision for the Bankruptcy Estate.

The Trustee and Minninger testified that their interactions and dealings did not extend beyond this negotiation.  Minninger had not met or communicated with the Trustee prior to the negotiations over the Church Road Property.  The Trustee's evaluation of the purchase price was based on his understanding of the value of the property and the 2017 appraisal of the .45 Acre Tract.  Both parties testified to the transaction being conducted at arms-length, and Moore did not present any evidence to suggest otherwise.  While the Church previously contacted Dr. and Mrs. Rai about purchasing the .45 Acre Tract, the Church refused the offer of $156,000.00 to purchase the .45 Acre Tract because of their belief that the price was too high.  The evidence presented at the Hearing, in the Motion for Sale, and the Objection support the Church's position that the initial offer was substantially higher than the fair market value of the .45 Acre Tract, especially without the additional Settlement Property included.  Indeed, the 2017 appraisal valued the .45 Acre Tract at only $21,954.24.  (Dkt. 786).  There is no evidence to suggest that the purchase price and negotiations were not in good faith and based on a reasonable and sound business decision.

The Trustee testified that the expense to advertise and orchestrate a public auction for the Church Road Property, the last asset of the Bankruptcy Estate, was unlikely to yield a significantly higher sale price.  As the Trustee and Minninger testified, the small, triangular-shaped Church Road Property is partially comprised of a remnant of the Eminent Domain Action.  While the Trustee relied on the 2017 appraisal of the .45 Acre Tract of land to determine a purchase price for the Church Road Property, the Trustee felt that the expense of an additional appraisal that included

the Settlement Tract would not benefit the Bankruptcy Estate but rather diminish the net proceeds from the sale. Moore did not present an appraisal or survey that refutes the 2017 appraisal that the Trustee relied upon in determining the value of the Church Road Property.

As Minninger testified, the setbacks and zoning requirements leave a large portion of the Church Road Property useless. At its widest point, the Church Road Property is approximately one hundred and fifty (150) feet. (Trustee Ex. 1). With the fifty (50) foot setback and thirty-five (35) foot setbacks in place, the Church Road Property has less than sixty-five (65) feet of buildable property. Further complicating the potential for development is the triangular shape of the Church Road Property that leaves the acreage in the narrowest portion of the tract unusable. While Moore contends that the other four (4) tracts of the Gluckstadt Property sold for nearly $6.00 a square foot, the circumstances surrounding the Church Road Property are unusual, and Moore presented no evidence to support his position. Additionally, Moore did not present any evidence that the property values have increased since the 2017 appraisal.

Another issue plaguing the marketability of the Church Road Property is access. Moore presented alternative solutions to the access issues with the Church Road Property. First, Moore suggested an easement by agreement. The Church, as the owner of one-half of Church Road, is unlikely to cooperate with a different potential purchaser to grant access from the Church side because of safety and other concerns. Second, Moore suggests petitioning a court for an easement by necessity from the Parkway. It is uncertain and speculative if a state court action for an easement by necessity would remedy the access issue. Furthermore, the potential for and cost of litigation to acquire access to the Church Road Property further devalues its potential sale price. Moore did not present any testimony by Rai or other witnesses or introduce into evidence anything to support Rai's position that access is not an issue with the Church Road Property.

Without exhausting more resources of the Bankruptcy Estate, the Trustee negotiated a sale with the only party who expressed an interest in the Church Road Property and the only party the Trustee, after weighing the circumstances, logically concluded would be interested in purchasing the Church Road Property. While Rai "offered" to purchase the property for $1,000.00 more than the Potential Purchaser, Moore specifically stated at the Hearing that Rai did not ask the Court to approve the sale to him and the amount proposed by Rai is not significantly higher than the Church's offer. Rai did not attend the Hearing or introduce into evidence the Proposed Purchase Sale Agreement or the U.S. Bank Letter. The seriousness of the Potential Purchaser, the absence of legitimate competing offers, and the Trustee's familiarity with the Church Road Property, evidence the Trustee's sound business judgment in accepting the slightly lower price, and only true offer, from the Potential Purchaser. The Potential Purchaser is aware of the condition and restrictions on the Church Road Property and still presented at the Hearing with a check for the full purchase amount. The purchase of the Church Road Property will allow the Church to close the southern portion of Church Road for the safety of the members and employees of the Church. Finally, Minninger testified that it is unlikely that the Potential Purchaser could participate in an auction of the Church Road Property for administrative reasons associated with the Church. Based on the evidence presented at the Hearing, the Motion for Sale, the Objection, and the sale procedure, the price and the sale were in the best interest of the Bankruptcy Estate. Accordingly, the Court approved the Motion for Sale and overruled the Objection at the Hearing.

## Conclusion

For the reasons previously stated, the Court finds that the Motion for Sale should be granted to the good faith Potential Purchaser. Neither the Response nor the evidence and testimony at the Hearing present any convincing evidence to suggest that the Trustee, dealing at arms-length with

the Potential Purchaser, did not make a sound business decision in negotiating the sale of the Church Road Property. A separate final judgment consistent with this Opinion will be entered in accordance with Rule 7054, 9014, and 9021 of the Federal Rules of Bankruptcy Procedure.

IT IS, THEREFORE, ORDERED that the Motion for Sale is granted to the Potential Purchaser as a good faith purchaser entitled to the full protections of 11 U.S.C. § 363(m), and the Objection is overruled.

##END OF OPINION##