

**SO ORDERED,**

**Judge Jamie A. Wilson**
**United States Bankruptcy Judge**
**Date Signed: January 4, 2023**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

VCR I, LLC,                                                    CASE NO. 12-02009-JAW

DEBTOR.                                                       CHAPTER 7

### ORDER SUSTAINING UNITED STATES
### <u>TRUSTEE'S OBJECTION TO TRUSTEE'S FINAL REPORT</u>

This matter came before the Court for hearing on October 17, 2022 (the "Hearing"), on the Trustee's Final Report ("TFR") (Dkt. #990) filed by Derek A. Henderson, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of VCR I, LLC ("VCR"); the United States Trustee's Objection to Trustee's Final Report (the "Objection") (Dkt. #992) filed by David W. Asbach, Acting United States Trustee for Region 5 (the "UST"); and the Response to United States Trustee's Objection to Trustee's Final Report (the "Response") (Dkt. #996) filed by the Trustee in the above-referenced bankruptcy case (the "Bankruptcy Case"). At the Hearing,[1] Christopher J. Steiskal represented the UST, and the Trustee represented himself.

---

[1] A transcript of the Hearing appears at Dkt. #1003.

At the Hearing, the UST introduced seven exhibits into evidence without objection[2] and called the Trustee as an adverse witness.[3] The Trustee testified on his own behalf, did not introduce any exhibits into evidence, and did not call any other witnesses.

### Introduction

After more than ten years, multiple appeals,[4] and three bankruptcy judges,[5] the Bankruptcy Case is ready to be closed but for two final issues, both of which arise from the TFR submitted by the Trustee. The TFR reflects total disbursements of $8,224,791.60 on which the Trustee seeks a commission of $269,993.75. The UST contends that the commission exceeds the "statutory cap" imposed by 11 U.S.C. § 326[6] because the Trustee calculated the "base" incorrectly. Even if the commission base is correct, the UST asserts that the amount of the commission is unreasonable and should be reduced. According to the UST, the amount of compensation in dispute is approximately $80,000. (Dkt. #992 at 8). The UST also objects to the TFR because of the Trustee's failure to pay post-petition interest to VCR's general unsecured creditors.

Boiled down, these contested matters present the following main issue: Can a settlement agreement be used to circumvent the provision in § 326(a) that excludes statutory compensation based on the return of a debtor's surplus funds? The resolution of this issue involves examination of two documents: (1) the Stipulation and Agreed Final Judgment (the "Agreed Judgment")[7] and (2) the

---

[2] The UST's exhibits are cited as "(UST Ex. #__)".

[3] Because the Trustee did not file the Response until the night before the Hearing, the Court gave the UST the option of continuing the Hearing to allow him sufficient time to review the Response and file a reply. The UST chose to proceed with the Hearing as scheduled.

[4] *Gluckstadt Holdings, LLC v. VCR I, LLC (In re VCR I, LLC)*, 3:17-CV-820-CWR-LRA (S.D. Miss. May 9, 2018), *affirmed*, 922 F.3d 323 (5th Cir. 2019); *Rai v. Henderson (In re VCR I, LLC)*, 3:18-CV-420-LG-RHW (S.D. Miss. Feb. 12, 2019), *affirmed*, 789 F. App'x 992 (5th Cir. 2019); *Rai v. Henderson*, 3:19-CV-808-DPJ-FKB (S.D. Miss. Apr. 1, 2020) (appeal dismissed as moot).

[5] The Bankruptcy Case was initially assigned to the Honorable Edward Ellington and was reassigned to the Honorable Neil P. Olack and now to this judge.

[6] All citations are to title 11 of the U.S. Code unless otherwise stated.

[7] (Adv. Proc. 19-00035-NPO, Dkt. #49). The Agreed Judgment was entered in a separate but related adversary proceeding.

Order Granting Motion to Approve Settlement of Claims (the "Settlement Order").[8] Both documents are discussed in detail below.

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Notice of the Hearing was proper under the circumstances.

## Facts[9]

The chapter 7 debtor, VCR, is a Mississippi limited liability company managed by Pradeep Raj Rai ("Pradeep") and owned by him and his family. (Dkt. #116 at 8). The Rai family formed VCR in 2004 for the purpose of developing and marketing for sale approximately forty-four acres of commercial property located at the intersection of Interstate 55 and Gluckstadt Road in Madison County, Mississippi (the "Gluckstadt Property"). At some point, disputes arose among members of the Rai family about their respective ownership interests in VCR. As to these disputes, Chiman Rai ("Chiman") and Vimla Rai ("Vimla") are at the top of the Rai family tree. (Hr'g Tr. at 5-6). At the bottom of the tree are their four sons, Pradeep, Rajeeve Rai ("Rajeeve"), Sandhya Rai ("Sandhya") and Sandeep Rai ("Sandeep"), and one daughter, Jyoti Rai Chawla ("Chawla"). (Hr'g Tr. at 5-6).

Pradeep commenced this Bankruptcy Case on behalf of VCR by filing a chapter 11 petition for relief on June 21, 2012. (Dkt. #1). Two creditors asserted liens on the Gluckstadt Property, and their secured claims were paid in full from compensation received by VCR for approximately thirteen acres of the Gluckstadt Property taken by the Mississippi Transportation Commission in

---

[8] (Dkt. #963). The Settlement Order was entered in the main Bankruptcy Case.
[9] Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law.

an eminent domain proceeding. (Dkt. #158, #522). The remaining proceeds of approximately $450,000 were paid to VCR as the debtor in possession. (Dkt. #172). VCR's failure to deposit those funds in a debtor-in-possession bank account, among other reasons, led the Court to convert the Bankruptcy Case to a chapter 7 case on October 18, 2013. (Dkt. #195). The Trustee was thereafter appointed.[10]

Soon after his appointment, the Trustee sought permission to retain himself as general counsel.[11] (Dkt. #202). The Court granted the Trustee's employment application without objection. (Dkt. #206). At the time of the Trustee's appointment, the assets of VCR's estate consisted of more than thirty acres of the Gluckstadt Property. By statute, the Trustee had a duty to liquidate the Gluckstadt Property into cash. 11 U.S.C. § 704(a)(1). The sales process was met with opposition by members of the Rai family and proved time consuming. Eventually, the Trustee sold the remaining thirty acres of the Gluckstadt Property for approximately $6.8 million. (Dkt. #708). The bankruptcy estate being flush with cash, a notice was issued in the Bankruptcy Case setting February 11, 2014 as the deadline for all creditors (except a governmental unit) to file a proof of claim. (Dkt. #200).

---

[10] The UST selects a panel of individuals qualified to serve as trustees in chapter 7 cases and serves as an independent watchdog over the cases and the trustees he appoints. 28 U.S.C. § 586; *see* U.S. Dep't of Justice, Executive Office for U.S. Trustee, *Handbook for Chapter 7 Trustees* 2-1 (effective Oct. 1, 2012) (last updated June 2022). The Trustee, who is a Mississippi licensed attorney, is a member of the chapter 7 panel in this judicial district.

[11] The TFR shows that the Trustee, to date, has been paid $284,250.31 in attorney's fees as his own general counsel. (Dkt. #990 at 23). The Hearing transcript incorrectly reported this amount as $84,250.31. (Hr'g Tr. at 61). However, the undisputed amount in the TFR clearly calculates to $284,250.31 in previously paid compensation for services performed as general counsel. (Dkt. #990 at 23). The Trustee's employment of himself as general counsel is permissible so long as there is no "double dipping," which would occur if he received compensation for work that he was statutorily required to perform as the trustee. 11 U.S.C. § 327(d). The compensation for work performed as his own general counsel is in addition to the Trustee's § 326 statutory compensation. *See In re Lally*, 612 B.R. 246, 254-55 (Bankr. D.N.H. 2020).

### A. Disputed Ownership of VCR & Tax Returns—*Henderson v. Rai (In re VCR I, LLC)*, Adv. Proc. 19-00035-NPO

VCR had not filed tax returns for several years prior to filing bankruptcy. (Hr'g Tr. at 13-14). The Trustee was in the process of winding up the final affairs of VCR, including the preparation of delinquent tax returns, but purportedly could not do so without determining the owners of VCR, the percentages of their ownership interests, or the effective date on which they acquired their interests. (Adv. Proc. 19-00035-NPO, Dkt. #1 at 9). The ongoing disputes among the Rai family members over the ownership of VCR led to the Trustee's initiation of an adversary proceeding against Chiman, Vimla, Pradeep, Sandhya, Sandeep, and Rajeeve. *See Henderson v. Rai (In re VCR I, LLC)*, Adv. Proc. 19-00035-NPO (Bankr. S.D. Miss. 2019), Dkt. #1.

Because of information and documents obtained during discovery, the Trustee amended the adversary complaint to include the Vimla L. Rai Irrevocable Trust (the "Vimla Trust") and LULU I, LLC[12] ("LULU") as additional defendants. (Adv. Proc. 19-00035-NPO, Dkt. #31). In the amended adversary complaint, the Trustee described a series of transfers and assignments of varying interests in VCR beginning in 2008.[13] In the summer of 2008, Chawla assigned all of her interest in VCR to Vimla, and Chiman and Vimla conveyed to Pradeep, Sandhya, and Sandeep each an interest in VCR equal to the federal gift tax exemption ($12,000). Later in the fall, a restated operating agreement was executed naming Chiman as fifty percent (50%) owner and Vimla as fifty percent (50%) owner of VCR. During that same month, Chiman transferred all of his interest in VCR to Vimla. In late 2010, Vimla twice assigned to Pradeep, Sandhya, and Sandeep

---

[12] LULU I, LLC is a Mississippi limited liability company formed by Pradeep, Sandhya, and Sandeep in 2011.

[13] Rajeeve's father, Chiman, is presently serving a life sentence for the murder of Rajeeve's wife. (Hr'g Tr. at 11-12); *see Rai v. Georgia*, 775 S.E.2d 129 (Ga. 2015). The Trustee suggested at the Hearing that the motivation behind the transfers was to protect the Gluckstadt Property against the civil claims of the murdered woman's family. (Hr'g Tr. at 11).

each an interest in VCR equal to the federal gift tax exemption ($13,000). The second 2010 as-signment, signed the same day as the first, indicated that Chiman and Vimla had also made gift transfers to Pradeep, Sandhya, and Sandeep in years 2004 through 2008 and that Vimla had done so in years 2009 through 2011, but those documents were missing. A resolution made effective January 1, 2011, set forth the membership interests held in VCR as follows:

| Vimla L. Rai | 88.80488% |
|---|---|
| Pradeep Raj Rai | 11.19512% |
| Sandhya Rai | 11.19512% |
| Sandeep Rai | 11.19512% |
| Total | 122.39024% |

(Adv. Proc. 19-00035-NPO, Dkt. #31 at 6-7). The total percentage in the resolution exceeded 100%, a reflection of the ongoing disputes among the Rai family members.

Then, in the spring of 2011, Vimla created the Vimla Trust, and Pradeep, Sandhya and Sandeep formed LULU. Vimla also purportedly assigned all of her interest in VCR to LULU and transferred all of her interest in LULU to the Vimla Trust. Attached to the amended adversary complaint are seventy pages of exhibits purportedly reflecting the transfers and assignments from 2008 to 2011.

### 1. Agreed Judgment—Settlement of Adversary Proceeding Resolving Ownership of VCR—*Henderson v. Rai (In re VCR I, LLC)*, Adv. Proc. 19-00035-NPO

Before the trial of the adversary, the Trustee submitted the Agreed Judgment (Adv. Proc. 19-00035-NPO, Dkt. #49) signed by all the parties, which the Court entered on August 6, 2020. The parties agreed to "the amount of ownership interest in VCR held by all holders in each relevant year" and to "all transfers and/or changes in the amounts of ownership interests held in VCR" as shown in a chart attached to the Agreed Judgment. (Adv. Proc. 19-00035-NPO, Dkt. #49 at 3). They also agreed that Vimla, Pradeep, Sandeep, and Sandhya had assigned their respective inter-ests in VCR to LULU in 2011, that no further transfers of interests in VCR had been made since then, and that "LULU is the holder of 100% of the interest in VCR." (Adv. Proc. 19-00035-NPO,

Dkt. #49 at 3). Consistent with their agreement, the first decretal paragraph in the Agreed Judgment declares that LULU is the holder of all interests in VCR:

> IT IS THEREFORE ORDERED that, as to Count One of the First Amended Complaint, LULU is declared the owner and holder of all interests in VCR and is entitled to receive 100% of any distribution made by the Trustee to such holder.

(Adv. Proc. 19-00035-NPO, Dkt. #49 at 4). Of particular relevance to the present dispute is the description of LULU's interest in VCR's estate funds in paragraph 10 of the Agreed Judgment:

> 10.    LULU remains a viable entity and is in good standing with the Mississippi Secretary of State, and Pradeep is the Manager. When the Trustee is prepared to make final distribution of estate funds to LULU, as the holder of the allowed interests in VCR, LULU is ready, willing and able to receive it.

(Adv. Proc. 19-00035-NPO, Dkt. #49 at 3).

## B. Claims Disputes Among the Rai Family Members in the Bankruptcy Case

The settlement of the adversary proceeding resolved the ownership dispute but did not fully resolve the claims disputes among the Rai family members. Four members of the Rai family filed proofs of claim in the Bankruptcy Case. (Cl. #6-2, #7-1, #10-1, #12-2, #13-1). Pradeep filed a proof of claim (Cl. #6-2) in the amount of $2,867,209.73 for "[m]oney loaned, loans repaid, and expenses paid on behalf of debtor." Rajeeve filed two proofs of claim (Cl. #7-1, #10-1)[14] in the amounts of $59,000 for "[r]epayment of [l]oans for [b]ank [i]nterest [n]ote [p]aid" and $15,010.10 based on a quitclaim deed that purportedly granted him a ten percent (10%) interest in the Gluck-stadt Property. Vimla filed a proof of claim (Cl. #12-2) in the amount of $1,462,894.03 for "[f]unds

---

[14] Rajeeve transferred both proofs of claim (Cl. #7-1, #10-1) to Pradeep on December 16, 2020 (Dkt. #910, #912).

incurred for the operation or defense of VCR I, LLC," and Chawla filed a proof of claim (Cl. #13-1) in the amount of $330,000 for the same reason. In addition, Rajeeve filed a proof of claim (Cl. #8-1) on behalf of Rai Holdings, LLC (Cl. #8-1) in the amount of $55,176.74 for "[i]nvoices, [b]ills [p]aid on behalf of Debtor." LULU did not file a timely proof of claim.[15] (Hr'g Tr. at 17). That fact is important for reasons explained later.

The Rai family disputed each other's claims; Vimla and Chawla were on one side, and Pradeep and Rajeeve on the other. Vimla asserted that Pradeep was seeking reimbursement for expenses that she herself had paid on behalf of VCR. (Dkt. #861). Vimla generally denied the validity of the claims filed by Rajeeve (Dkt. #863) and Rai Holdings, LLC (Dkt. #862).

Pradeep, Rajeeve, and Rai Holdings, LLC, in turn, objected to the proofs of claim filed by Vimla (Dkt. #905) and Chawla (Dkt. #906). They alleged that Vimla and Chawla had not provided sufficient documentation of their claims and that their claims were time-barred by the statute of limitations. They also maintained that Vimla had waived any claim for reimbursement when she assigned her ownership interest in VCR to her sons in 2011. (Dkt. #905). The Trustee filed his own objections to these claims. (Dkt. #865, #866, #867, #916, #917).

## 1. Settlement Order—Settlement of Claims Disputes Among Rai Family in Bankruptcy Case

At the Trustee's request, the Court set a date for mediation of the claims disputes. (Dkt. #937). The mediation was successful. Following the mediation, the Trustee filed the Trustee's Motion to Approve Settlement of Claims (the "Settlement Motion") (Dkt. #945), seeking the Court's approval of the settlement of the objections to the proofs of claim filed by Rajeeve, Rai Holdings, LLC, Chawla, Vimla, and Pradeep. Pursuant to the terms of the settlement, the proofs of claim

---

[15] As discussed later, the Trustee filed a proof of claim on LULU's behalf seven years after the February 11, 2014 bar date.

filed by Rajeeve (Cl. #7-1, #10-1), Rai Holdings, LLC (Cl. #8-1), and Chawla (Cl. #13-1) were disallowed; the proof of claim filed by Vimla (Cl. #12-2) was allowed in the amount of $1.3 million; and Pradeep's proof of claim (Cl. #6-2) was allowed in the amount of $2.3 million. Also, the Trustee proposed to place in escrow in the trust account of the mediator "[a]ll funds remaining in the bankruptcy estate of VCR I, LLC after payment of all claims against the estate." (Dkt. #945 at 3). The Settlement Motion did not state that VCR's payment to LULU was in satisfaction of a debt or that LULU was to be treated as a general unsecured creditor. (Dkt. #945, #963). No objection to the Settlement Motion was filed.

The Trustee prepared and submitted a proposed order approving the settlement. (Dkt. #945). The Court set the proposed order for a telephonic hearing. (Dkt. #953). At the hearing, the Court directed the Trustee to file a motion to establish a bar date for filing administrative claims incurred prior to the conversion of the Bankruptcy Case and to add a paragraph in the proposed order providing that payments to Pradeep and Vimla would not be made until after the chapter 11 administrative claims bar date had expired. (Hr'g Tr. at 21-22). If a substantive or material chapter 11 administrative claim was timely filed, the Trustee would not be permitted to make any payments to Vimla or Pradeep without further order of the Court. (Hr'g Tr. at 21-22).

As per the instructions from the Court, the Trustee filed a motion to establish a bar date for filing chapter 11 administrative expense claims, which the Court granted. (Dkt. #961). No such claim was filed, and the Court entered the Settlement Order (Dkt. #963), which had been drafted by the Trustee. No appeal was filed.

## 2. Payments of $3.6 Million to Vimla and Pradeep Pursuant to Settlement Order

Pursuant to the Settlement Order, the Trustee paid Vimla $1.3 million and Pradeep $2.3 million on May 10, 2021 in satisfaction of their claims. (Dkt. #990 at 20). In his Objection to the TFR, the

UST does not oppose the payment of compensation to the Trustee based on these creditor-claim payments totaling $3.6 million. (Dkt. #992). Accordingly, the Trustee will receive statutory compensation under § 326(a) for his efforts in making these payments to creditors.

### 3. Trustee's Filing of Proof of Claim #14-1 Pursuant to Settlement Order

In April 2021, the <u>Trustee</u> filed a proof of claim (Cl. #14-1) on behalf of LULU in an amount "tbd" based on "[s]ubordinated interest claim – Court Order dated 01/07/21 (Dkt 963)." (Cl. #14-1). The amount was intentionally omitted from proof of claim #14-1 because its calculation could not be determined until after payment of all of VCR's creditors.

The Trustee twice prepared to close the estate and twice amended proof of claim #14-1 so that he could "balance[] my books." (Hr'g Tr. at 55). In August 2021, he filed amended proof of claim #14-2 to specify the amount of the payment to LULU, $2,711,442.79. The Trustee later discovered a tax issue that required an additional distribution of estate assets. (Hr'g Tr. at 55). As a result, he filed amended proof of claim #14-3 to reduce the amount to $2,643,066.16.

### C. TFR

On August 31, 2021, the Trustee filed the TFR seeking $269,993.75[16] in trustee compensation based on total disbursements of $8,224,791.60.[17] The total disbursements include the payment of $2,643,066.16 to LULU pursuant to the Settlement Order. (Cl. #14-3).

---

[16] If approved, the Trustee would have received total compensation in the amount of $554,244.06. ($269,993.75 in Trustee statutory compensation + $284,250.31 for compensation as general counsel = $554,244.06).

[17] A trustee in a chapter 7 case must make a final report and file a final account of the administration of a case. 11 U.S.C. § 704(9). When a case is ready to be closed, the trustee must prepare and submit the final report to the UST for review before filing it with the Court. According to the *Handbook for Chapter 7 Trustees*, the policy of the UST is not to object to the statutory maximum compensation allowed for a trustee "except in rare and unusual circumstances." *See* U.S. Dep't of Justice, Executive Office for U.S. Trustee, *Handbook for Chapter 7 Trustees* 4-25 (effective Oct. 1, 2012) (last updated June 2022).

The TFR indicates that all secured and priority claims have been paid as well as all administrative expense claims with the exception of the Trustee's compensation. The TFR lists a total of five unsecured claims. Two of these claims, Vimla's and Pradeep's creditor claims totaling $3.6 million, were settled and paid in 2021.[18] As to the remaining three unsecured claims, the Trustee proposes to pay a total of $52,485.70. He has not paid, and does not propose to pay, post-petition interest to any of VCR's remaining unsecured creditors.

### D. UST's Objection to TFR Proposing Compensation for the Payment to LULU

The UST objects to the payment of a commission on the disbursement of $2,643,066.16 to LULU. (Dkt. #992). The UST argues that these funds are to be paid to LULU, not because LULU is a creditor of the bankruptcy estate but because LULU is the owner of all interests in VCR. (Dkt. #992 at 2). In other words, the UST views LULU as a stand-in for VCR.

In support of his argument, the UST points to § 726(a), which sets forth the order of distribution of property of the estate among general unsecured creditors. Funds remaining after the payment of claims set forth in § 726(a)(1)-(5), commonly referred to as "surplus" funds, are disbursed to the debtor pursuant to § 726(a)(6). The UST argues that a distribution of surplus funds to an equity holder like LULU is permitted only to the extent it is deemed to be a distribution to a debtor under § 726(a)(6) and a trustee's commission may not be based upon moneys disbursed to a debtor pursuant to § 326(a).

According to the UST, the Settlement Order did not declare LULU a creditor of the estate or allow the Trustee to include the distribution to LULU in his commission. Instead, the Settlement Order "was a purely administrative measure to ensure that the surplus payment to [VCR] was directed to the proper recipient" in light of the disputes among the Rai family members. (Dkt. #992

---

[18] There is nothing to suggest that Vimla and Pradeep's claims were not completely settled or that they reserved any right to claim post-petition interest as part of their settlement with the Trustee.

at 3). The UST points to the following excerpts from the Settlement Order to show that the distribution to LULU was intended to be a distribution of surplus funds under § 726(a)(6):

(a)  Under the Settlement Order, "[a]ll funds *remaining in the bankruptcy estate* of VCR I, LLC *after payment of all claims* against the estate" were to be placed in escrow. (Dkt. #963 ¶ 5(H) at 4) (emphasis added).

(b)  The Settlement Order cites the Agreed Judgment for its previous ruling that "LULU I, LLC, a Mississippi limited liability company, held all interests in VCR and was entitled to the distribution made by the Trustee for such interests." (Dkt. #963 ¶ 6 at 4).

(c)  Payment of the settled claims of Vimla and Pradeep "still allows the Trustee to retain a balance of $3,091,716.92 *for other creditors*, the Chapter 7 Administrative Expenses, *Trustee's Compensation* and a *final distribution to the interests to LULU I, LLC.*" (Dkt. #963 ¶ 11 at 5-6) (emphasis added).

(d)  The Settlement Order notes that "[f]or administrative and distribution purposes, the Trustee also requests authority to file and assign LULU I, LLC's subordinated claim to be Claim No. 14 and approved." (Dkt. #963 ¶ 11 at 6).

(e)  The Settlement Order provides that "[*a*]*ll funds remaining in the bankruptcy estate* of VCR I, LLC *after payment of all claims against the estate*, which will be the subordinated payment to LULU I, LLC shall be placed in escrow." (Dkt. #963 at 7) (emphasis added).

(f)  The Settlement Order authorizes the Trustee to file LULU's subordinated claim "[f]or administrative and distribution purposes." (Dkt. #963 at 7).

In summary, the UST argues that because the distribution to LULU is justified only if LULU stands in the shoes of VCR, the distribution to LULU cannot be included in computing the Trustee's commission. The UST opposes "the Trustee's use of this payment of surplus funds to [VCR]'s stand-in as a basis for swelling the Trustee's commission." (Dkt. #992 at 7).

The UST faults the Trustee for failing to disclose to the Court that "his seemingly innocuous request to file a proof of claim [on behalf of LULU] would trigger a commission that could be inconsistent with the [Bankruptcy] Code." (Dkt. #992 at 7 n.4). At the Hearing, the UST introduced into evidence without objection the following exchange of emails between the Trustee and the UST dated November 4 and 15, 2017:

**McAlpin, Ronald (USTP)**

| | |
|---|---|
| **From:** | McAlpin, Ronald (USTP) |
| **Sent:** | Wednesday, November 15, 2017 11:08 AM |
| **To:** | Derek Henderson |
| **Cc:** | 'Eileen Shaffer'; 'Stephen Smith'; 'Kimberly Lentz' |
| **Subject:** | RE: Trustee Comp Question |

Surplus funds are payable to the *debtor* under 11 U.S.C. § 726(a)(6). As you note, debtor means person or municipality concerning which a case under title 11 has been commenced. 11 U.S.C. § 101(13). Under 11 U.S.C. § 101(41), person includes individual, partnership and corporation even where the entity has been dissolved. See *Automatic Sprinkler Corp. of Am. v. Darla Envtl. Specialists*, 53 F3d 181, 182 (7th Cir. 1995) (holding a dissolved corporation is a person under the bankruptcy code).

In our view the surplus funds should be paid to the debtor, i.e. the LLC, after the payment of claims plus interest and the division of those funds should be determined by the members of the LLC either by agreement or through a state court dissolution proceeding. Since the funds would be disbursed to the debtor 11 U.S.C. § 326 would preclude compensation on the distribution.

**From:** Derek Henderson [mailto:derek@derekhendersonlaw.com]
**Sent:** Saturday, November 04, 2017 3:19 PM
**To:** McAlpin, Ronald (USTP) <Ronald.McAlpin@UST.DOJ.GOV>
**Cc:** 'Eileen Shaffer' <eshaffer@eshaffer-law.com>; 'Stephen Smith' <stephen@smithcpafirm.com>; 'Kimberly Lentz' <kim@lentzlittle.com>
**Subject:** Trustee Comp Question

Ron,

I have a case where the debtor was an LLC. There were 3 or so members (exact number to be decided).
The LLC has been administratively dissolved since in has been in ch 7.
Now it appears the LLC is going to have enough money at the end of the case to pay all creditors and make some disbursement to the members.
11 USC 326 says Trustee comp is paid "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including the holders of secured claims"
"Debtor" is a defined term (section 101(13)) to be a Person which a case under this title has been commenced.
The members are not in bankruptcy and are not the debtor. I would agree they are parties in interest though.
Question – Does the trustee get trustee comp on the disbursement/turnover of moneys to the LLC members? I do not recall that I have ever in the past had an LLC that still had money to disburse after creditors. I don't want to overcharge but certainly want to leave trustee comp unclaimed.

Derek A. Henderson
Attorney at Law
1765-A Lelia Drive, Ste 103
Jackson, MS 39216
(601) 948-3167
(601) 948-0109 Fax

(UST Ex. #7; Hr'g Tr. at 69).

The Trustee testified that he did not remember whether he wrote this email about this Bankruptcy Case or another. (Hr'g Tr. at 67). Given the date of the email, he doubted that he would have started the process of calculating his total commission in this Bankruptcy Case at that time.

He wrote in the email, however, that he could not recall administering any other chapter 7 case that "had an LLC that still had money to disburse after creditors." (UST Ex. #7). In his testimony, the Trustee agreed that surplus funds must be returned to the debtor in an "individual" case but tried to draw a distinction between an individual debtor and a corporate debtor. (Hr'g Tr. at 44). However, the Bankruptcy Code does not recognize such a distinction with respect to surplus funds. *See* 11 U.S.C. § 101(13) (defining "debtor" as a "person . . . which a case under this title has been commenced"); 11 U.S.C. § 101(41) (defining "person" as including a partnership and corporation).

The email exchange, according to the UST, demonstrates that before the Trustee filed the Settlement Motion, he was aware of the UST's position that any disbursement to VCR's members would not be considered part of his commission base. The Court notes that the facts and arguments discussed in the 2017 emails are similar to those presented here.

**E.  Trustee's Response to UST's Objection—LULU Is a Party in Interest, Not a Stand-In for VCR**

In response, the Trustee argues that the distribution in question constitutes payment of LULU's claim against the estate and for that reason, LULU is a "party in interest" for purposes of § 326(a).[19] (Dkt. #996 at 2-3). Accordingly, the Trustee asserts that the disbursement to LULU— a "party in interest"—must be included in the commission base. He eschews any attempt to label LULU as either a creditor or equity owner of VCR because LULU falls under the definition of a "party in interest" under either label. He asserts that the purpose of the Settlement Order was to facilitate the liquidation and distribution of the bankruptcy estate by paying all disputed claims through LULU and that the Settlement Order granted LULU "an allowed general secured claim." (Dkt. #996 at 2-3; Hr'g Tr. at 21, 32, 35, 54).

---

[19] The argument that LULU is a party in interest also appears in the Trustee's 2017 email. (UST Ex. #7).

The Trustee asserts two other arguments in support of his commission. First, he argues that the UST's contention that LULU is a stand-in for VCR stretches the definition of "debtor" beyond its meaning.[20] The term "debtor" is defined in the Bankruptcy Code as the person "concerning which a case . . . has been commenced," that is, the person who filed the petition for relief. 11 U.S.C. § 101(13). According to the Trustee, even if LULU owns all the membership interests in VCR, LULU exists as a separate entity from VCR, and it is undisputed that VCR, not LULU, commenced the Bankruptcy Case. (Dkt. #996 at 9).

The Trustee's second argument is that the UST should not be allowed "to retroactively question the equity of the uncontested settlement previously approved by the Court." (Dkt. #996 at 13). The Trustee points out that the Settlement Order does not expressly describe LULU as a "stand-in debtor" or identify the funds to be distributed to LULU as "surplus." (Dkt. #996 at 12).

## Discussion

### A. Trustee's Compensation

Chapter 7 trustee compensation, unlike the fees of other bankruptcy professionals, is based on the commission outlined in § 326(a). Under that statute, a trustee's compensation consists of varying percentages of all moneys disbursed or turned over by the trustee to parties in interest, <u>excluding the debtor</u> but including secured creditors. Section 326(a) provides:

> [T]he court may allow reasonable compensation under § 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such money in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor but including holders of secured claims.

---

[20] The argument that the members of an LLC in bankruptcy are not themselves debtors also appears in the Trustee's 2017 email. (UST Ex. #7).

11 U.S.C. § 326(a). The Fifth Circuit Court of Appeals has held that the graduated percentage commission of § 326(a) is a presumptively reasonable amount for chapter 7 trustee compensation awards. *See Lejeune v. JFK Capital Holdings, LLC (In re JFK Capital Holdings, LLC)*, 880 F.3d 747, 753 (5th Cir. 2018). Simply put, the commission is not a "cap" but an entitlement except in "extraordinary circumstances," and any reduction in the statutory amount is permissible only in a "rare event." *Id*. at 756.

The § 326(a) calculation should be straightforward because there is only one circumstance when a trustee cannot claim compensation—when "moneys [are] disbursed or turned over" to the debtor. 11 U.S.C. § 326(a). The Trustee's argument here appears to be that the claim-creation mechanism in the Settlement Order authorizing payment to LULU instead of directly to VCR side steps this exclusion in § 326(a). The payment of surplus funds to someone or something other than directly to the debtor is not expressly contemplated by § 726(a) or, by extension, § 326(a). For this reason, a question arises as to whether a settlement agreement can contract around the hierarchy of priorities set forth in § 726(a), thus allowing the Trustee to receive statutory compensation for a return of surplus funds that he otherwise would not be entitled to receive under § 326. The answer to that question requires the Court to determine where LULU fits within the distribution scheme of § 726(a). The Court begins its analysis by considering who LULU is and what it is receiving.

### 1. LULU is not the Debtor.

It is undisputed that LULU is not the debtor. LULU, by virtue of the Agreed Judgment, is the holder of all of the membership interests in the debtor, VCR.

## 2.   LULU is a stand-in for VCR.

The UST contends, and the Court agrees, that LULU "stands in the shoes" of VCR for the limited (and agreed upon) purpose of receiving surplus funds otherwise belonging to VCR so that the Bankruptcy Case may be closed. LULU's right to payment was created post-petition by virtue of the Agreed Judgment and Settlement Order which transferred VCR's subordinated equity claim to LULU. If LULU is not a stand-in for VCR, would the Trustee be authorized to pay the surplus proceeds to LULU? The answer is "no."

Although not cited by either the UST or the Trustee, the bankruptcy court's decision in *In re National Emergency Medicine Association*, No. 19-00026, 2020 WL 3167696 (Bankr. D.C. June 11, 2020), supports the Court's ruling. There, the bankruptcy court held that distributions of a debtor's surplus funds to three nonprofit entities that had no other connection to the bankruptcy case must be excluded from the chapter 7 trustee's commission base. After payment of all allowed claims of creditors and all allowed administrative expenses, surplus funds remained in the estate. Because the debtor was a tax-exempt entity under 26 U.S.C. § 501(c)(3), state law required that the debtor's assets continue to be used for charitable purposes. The chapter 7 trustee obtained approval to distribute the surplus to three nonprofit entities. In his final report, the trustee included these disbursements in his commission base. The bankruptcy court initially viewed the issue as whether the nonprofit entities were "parties in interest" within the meaning of § 326(a) but later framed the issue instead as whether the nonprofit entities should be treated as "standing in the shoes" of the debtor. *National Emergency Medicine Association*, 2020 WL 3167696, at *1. In the end, the bankruptcy court ruled that the situation was no different than if the trustee had returned the funds to the debtor. The Court finds that the facts of *National Emergency Medicine* are closely

aligned with the facts at bar. Like the nonprofit entities, LULU stands in the shoes of the debtor for the purpose of receiving surplus funds.

### 3. LULU is not a holder of a claim against VCR.

LULU is not a creditor or a holder of any claim against VCR's estate independent of the right to receive the surplus funds created post-petition in the Settlement Order. The Trustee admitted as much at the Hearing when he testified, as follows:

Q.  Now did – is it correct that LULU – or the debtor owed no debt to LULU; is that correct?

A.  Not that I'm aware of, no, sir.

(Hr'g Tr. at 59). Counsel for the UST later asked the Trustee about LULU's interest in the estate's assets as set forth in the Agreed Judgment:

Q.  So, isn't it correct that LULU's only interest in the debtor is its ownership interest in debtor?

A.  No. sir. If you read the rest of that sentence, it says it's entitled to receive any distributions made by the Trustee, the holders of allowed interest in VCR.
So, its interest is going to be two million and some-odd dollars, two million six forty-three.

Q.  But that interest is based on its ownership in VCR, correct?

A.  Yes.

(Hr'g Tr. at 61-62). The Trustee's assertions in the Response that LULU had a "pecuniary interest in the case" (Dkt. #996 at 5) and a "potential proof of claim prior to execution of the Settlement Agreement" (Dkt. #996 at 11) are unpersuasive in that LULU did not file a proof of claim for any "potential" claim, and the deadline to do so expired seven years before the Settlement Order that allowed the Trustee to file a proof of claim on LULU's behalf was approved. VCR did not list LULU as a creditor in its bankruptcy schedules. (Dkt. #35). Contrary to the Trustee's position that claims are being paid via LULU, there are no remaining disputed claims to be paid in the

Bankruptcy Case. (Dkt. #996 at 2). The allowed unsecured claims of Vilma and Pradeep have already been paid.

LULU's right to payment under the Settlement Order arose post-petition. The Bankruptcy Code defines the term "creditor" as "an entity that has a claim against the debtor that arose *at the time of or before the order for relief concerning the debtor*." 11 U.S.C. § 101(10)(A) (emphasis added). Indeed, the amount of the payment to LULU was unknown when the Trustee filed proof of claim #14-1 because it was not tied to a debt owed by VCR and could not be calculated until after payment of all other claims. These facts indicate that LULU was not a creditor of VCR entitled to a distribution under § 726(a)(1)-(5). Notably, § 726(a)(1)-(5) does not contemplate payment to mere "parties in interest" because even interested parties must have a legitimate claim against the estate to justify payment.[21] Stated simply, payment to LULU can only be justified under § 726(a)(6), which authorizes payment of surplus funds back to the debtor.

### 4. LULU is not an interested party for purposes of § 326(a).

Adopting the same reasoning that appears in his 2017 email, the Trustee asserts that LULU is a party in interest for purposes of § 326(a). He cites two provisions of the Bankruptcy Code in support of his position. First, he argues that the definition under § 101(14) of a "disinterested party" demonstrates that LULU is an "interested party." The definition of a "disinterested party" excludes creditors and equity security holders as well as any persons who have an interest materially adverse to the interest of the estate. 11 U.S.C. § 101(14). The Trustee contends that since creditors and security holders cannot be "disinterested parties," they must be "interested parties" for purposes

---

[21] *See* 11 U.S.C. § 726(a)(1)-(5) (setting forth payment of various types of "claims"); 11 U.S.C. § 726(a)(6) (regarding payments to a debtor).

of § 326. The Trustee's argument presents a false dichotomy. The term "parties in interest" is undefined in the Bankruptcy Code to account for its use in different contexts.[22]

The Trustee next directs the Court to § 1109 for guidance. (Dkt. #996 at 3). That statute lists those interested parties who may participate in a chapter 11 case. This section of the Bankruptcy Code speaks to standing, not entitlement to payment. While standing to appear and be heard in a chapter 11 bankruptcy case may be interpreted broadly, that interpretation does not address the ability of a trustee to receive compensation from a chapter 7 bankruptcy estate.

Finally, the Trustee cites two bankruptcy cases in support of his position: *In re Circle Investors, Inc.*, No. 02-39553, 2008 WL 910062 (Bankr. S.D. Tex. Apr. 3, 2008), and *In re Rybka*, 339 B.R. 464 (Bankr. N.D. Ohio 2000). He relies on *Circle Investors* for the proposition that disbursements made by virtue of a settlement agreement may be included in § 326(a)'s commission base. *In re Circle Inv'rs, Inc.*, 2008 WL 910062, at *3. The creditor in *Circle Investors*, however, was a judgment creditor, and the distribution in question arose from the settlement of an adversary proceeding based on the debtor's pre-petition conduct. *Id.* at *4. Unlike LULU, the judgment creditor in *Circle Investors* had a pre-petition claim against the estate. *Circle Investors* is not factually analogous.

The Trustee cites the second bankruptcy case, *Rybka*, for the proposition that a trustee's compensation may be based on disbursements to a non-creditor. However, *Rybka* is also factually distinguishable. *Rybka* involved the sale of real property jointly owned by the debtor and her sister. *Rybka*, 339 B.R. at 464. With the bankruptcy court's approval, the chapter 7 trustee employed a

---

[22] The term "parties in interest" appears in 46 sections of the Bankruptcy Code. *In re River Bend-Oxford, Assocs.*, 114 B.R. 111, 113 (Bankr. D. Md. 1990). The lack of a precise definition was intentional, as evidenced by congressional testimony prior to the enactment of the Bankruptcy Code of 1978. *Id.* The concept of "parties in interest" is meant to be dynamic and dependent upon the particular context in which it is applied. *In re Kutner*, 3 B.R. 422, 424 (Bankr. N.D. Tex. 1980).

real estate broker to sell the entire property, not just the estate's ½ interest. At the closing of the sale, the trustee and the debtor's sister each received a check for their ½ interest in the property. The trustee sought to include in her commission base the total sale proceeds received for the entire property, including the funds received by the debtor's sister. The bankruptcy court overruled the debtor's objection to the trustee's calculation because the sister, although not a creditor of the estate, was a party in interest with respect to the sale of the property by virtue of her joint ownership with the debtor. The *Rybka* case is not analogous because LULU was never a joint owner of the Gluckstadt Property or of any other asset of VCR's bankruptcy estate.

In the context of § 326(a), which is the relevant statute here, courts taking an expansive view of "parties in interest" have found that the term should "include an entity to whom distribution of estate assets is legitimately made *in furtherance of the overall distribution process contemplated in bankruptcy*." *In re N. Am. Oil & Gas, Inc.*, 130 B.R. 473, 480 (Bankr. W.D. Tex. 1990) (emphasis added), *abrogated on other grounds by Pritchard v. U.S. Trustee (In re England)*, 153 F.3d 232 (5th Cir. 1998). The reference to "the overall distribution process" invokes § 726(a), which establishes the order of priority in which distributions are made. The Court is persuaded that this approach is necessary in determining whether an entity qualifies as a party in interest for purposes of § 326(a). The approach urged by the Trustee, in contrast, is too broad because it fails to consider the interplay between § 326(a) and § 726(a). In interpreting a statute, "a court must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986).

In sum and substance, LULU would not have any interest in the surplus funds in the Bankruptcy Case if not for the administrative procedure set up in the Settlement Order whereby VCR and its owners agreed that the funds would be rerouted and paid directly to an escrow agent for

LULU. Any other interpretation of the Settlement Order would run afoul of § 726(a) and *Czewski v. Jevic Holding Corp.*, 580 U.S. 451, 137 S. Ct. 973, 979 (2017) ("The Code places equity holders at the bottom of the priority list. They receive nothing until all previously listed creditors have been paid in full.").

**5. LULU is an equity security holder for purposes of the Bankruptcy Case.**

LULU, by virtue of the Agreed Judgment, is an equity security holder[23] because it holds all of the interests in VCR and has no other allowed claim against VCR.

**6. LULU is receiving surplus funds.**

The Trustee's argument that § 326 excludes compensation only on a direct payment to VCR as the debtor ignores the nature of the funds being received by LULU. In other words, the Trustee believes that the Settlement Order changed the characterization of the funds to something other than surplus funds. (Dkt. #996 at 10). It did not. Although the word "surplus" does not appear in the Settlement Order, nothing in the Settlement Order purports to authorize payment to LULU of any funds other than surplus funds. Paragraph 7 in the Settlement Order provides:

> 7) All funds remaining in the bankruptcy estate of VCR I, LLC after payment of all claims against the estate, which will be the subordinated payment to LULU I, LLC, shall be placed in escrow in the trust account of G. Todd Burwell, P.A. ("Escrow Agent") until such time as persons to be more particularly described in the Settlement Agreement, including, but not limited to Vimla Rai and Pradeep Rai, agree to the distribution of said funds or a court or competent jurisdiction enters a final, non-appealable order decreeing how said funds shall be distributed. The Escrow Agent shall be paid a one time fee of $250.00 for holding and/or distributing funds;

---

[23] The Bankruptcy Code defines an "equity security holder" as the holder of an equity security of the debtor. 11 U.S.C. § 101(17). The term "equity security" is defined, in general, as: (1) a share in a corporation; (2) an interest of a limited partner in a limited partnership; or (3) a warrant or right to purchase, sell, or subscribe to such a share or interest. 11 U.S.C. § 101(16).

(Dkt. #963). Importantly, no language in the Settlement Order characterizes the payment to LULU as the satisfaction of any type of claim or even mentions the Trustee's compensation, and the Trustee concedes that LULU was not a creditor of VCR. (Hr'g Tr. at 59, 61-62).

The Trustee's amendments to proof of claim #14-1 adjusting the amount of the payment to LULU clearly reflect the nature of the funds—they are surplus funds and the final amount could not be determined until all other claims had been paid. Nothing in proof of claim #14-3 or the Settlement Order suggests that LULU was a creditor of VCR with a fixed claim.

The Settlement Order merely approved and allowed LULU to be paid the surplus funds of VCR. The Settlement Order permitted LULU to participate in the distribution of VCR's assets but did not raise the priority of its right to payment above VCR's. *See Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, 852 F.3d 405, 410 (5th Cir. 2017). There is no dispute that if not for the Settlement Order, the surplus funds would have had to be paid to VCR, and VCR was the only entity entitled to these funds. VCR's agreement to subordinate receipt of these funds did not make LULU a creditor and did not change the nature of the funds. It simply authorized the Trustee to reroute payment to LULU instead of VCR.

### 7. LULU can only fit in § 726(a)(6).

Because LULU is an equity security holder in VCR,[24] the payment in question must be deemed to be a distribution to VCR under § 726(a)(6) to avoid skipping the payment of claims in a higher priority class. In that regard, the United States Supreme Court made it clear in *Jevic* that § 726(a) prohibits distributions to equity security holders except through the distribution of the debtor's surplus under § 726(a)(6). *See Jevic,* 137 S. Ct. at 979.

---

[24] The corporate statement filed by VCR in the Bankruptcy Case showed no relationship at all to LULU. (Dkt. #8).

In his Response, the Trustee does not cite § 726(a) but refers to it indirectly when he describes LULU as an entity to whom distribution of estate assets will "legitimately be made in furtherance of the overall distribution process contemplated in bankruptcy." (Dkt. #996 at 8). Moreover, the Trustee argues that the subordination of LULU's claim prevents any violation of the priority scheme. But the Trustee does not view LULU's claim as being subordinated to all general unsecured claims. He attempts to place LULU's claim above post-petition interest claims, § 726(a)(5). Because the distribution to LULU is surplus funds and not payment of a creditor claim, the Trustee's placement of LULU's claim anywhere other than in the last category, § 726(a)(6), violates the priority scheme. Section 726's priorities are "fundamental to the Bankruptcy Code's operation" and are the "cornerstone of reorganization practice and theory." *Jevic*, 137 S. Ct. at 984 (quotation omitted).

To the UST's point regarding the Trustee's mischaracterization of the distribution to LULU as the payment of a prepetition claim, neither the Settlement Motion nor the Settlement Order describes LULU as a "general unsecured creditor." (Dkt. #992 at 6). Because LULU had no debt or claim against the estate to recharacterize as equity and because the Settlement Order did not treat LULU as a creditor, recharacterization of its claim is unnecessary. *See Grossman v. Lothian Oil Inc. (In re Lothian Oil Inc.)*, 650 F.3d 539, 542-44 (5th Cir. 2011).

By referring to the "overall distribution process," the Trustee appears to recognize that § 326 cannot be read in a vacuum to ignore § 726. Section § 726, however, identifies only two categories of payments that can be made by a Trustee from property of the estate: payments to claim holders in satisfaction of a claim[25] and payment to the debtor. In order to receive a commission under

---

[25] *See* 11 U.S.C. § 726(a)(1)-(5) (setting forth payment of various types of "claims"); 11 U.S.C. § 726(a)(6) (regarding payments to a debtor).

§ 326, LULU must be placed in one of the categories of § 726(a)(1)-(5).[26] Here, the factual analysis yields only one possible result—the funds being paid to LULU pursuant to the Settlement Order are surplus funds under the last category, § 726(a)(6).

Section 326 unequivocally excludes moneys disbursed to a debtor from a trustee's commission base. A chapter 7 debtor who receives a surplus after paying all administrative expenses and claims should not have its distribution further reduced by another layer of compensation to the trustee. *In re Vona*, 333 B.R. 191, 195-96 (Bankr. E.D.N.Y. 2005). Plainly put, VCR (or its members) should not have to pay the Trustee to get its (or their) own money back after all claims have been paid in full. That the Settlement Order allowed the Trustee to pay LULU the surplus funds instead of VCR directly, does not change the nature of the funds and such a mechanism cannot be used to circumvent the express exclusion contained in § 326.

## B. Post-Petition Interest Payments

"Bankruptcy is ordinarily for the insolvent." *Keystone Gas Gathering, LLC (In re Ultra Petroleum Corp.)*, 51 F.4th 138, 142 (5th Cir. 2022). Where a debtor is insolvent, the Bankruptcy Code does not permit payment of post-petition (or pendency) interest on unsecured claims. *See* 11 U.S.C. § 502(b)(2) (disallowing "claim[s] . . . for unmatured interest"); *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs.)*, 793 F.2d 1380, 1385 (5th Cir. 1986). Where a debtor is solvent, however, holders of allowed unsecured claims have a right

---

[26] Section 726(a) determines which general unsecured creditors may be "in the money." If there are not enough funds to reach a subordinated class, then the members of that class are "out of the money." General unsecured creditors with timely-filed claims are paid first. 11 U.S.C. § 726(a)(2). If their claims are paid in full and moneys remain, general unsecured creditors with tardily filed claims are paid next. 11 U.S.C. § 726(a)(3). Next in priority are general unsecured creditors with claims for non-compensatory fines, penalties, forfeitures, and punitive damages are paid. 11 U.S.C. § 726(a)(4). Claims for post-petition interest are paid next. 11 U.S.C. § 726(a)(5). Last to be paid is the debtor. 11 U.S.C. § 726(a)(6). Under § 726(a), therefore, there are only two categories of recipients to which a trustee may distribute property of the estate: first, to holders of "claims" as defined in § 101(10) (i.e., creditors), § 726(a)(1)-(5), and last, to the debtor, § 726(a)(6).

to receive post-petition interest before any surplus is returned to the debtor. *Debentureholdings Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 271 (1st Cir. 1982); *see In re Ultra Petroleum Corp.*, 51 F.4th at 151 ("Unlike the typical insolvent bankruptcy, a solvent debtor's pie is large enough for every creditor to have his full slice."). The statutory basis for this additional distribution rests on § 726(a)(5), which provides for "payment of interest at the legal rate from the date of filing of the petition." Only if there are enough funds to pay all unsecured creditors in full is post-petition interest payable. The justification for post-petition interest under § 726(a)(5) is "to prevent debtors from abusing the bankruptcy process by using it to delay payments and avoid interest obligations when at the time of filing the petition the debtor was actually solvent." *Thompson v. Ky. Lumber Co. (In re Ky. Lumber Co.)*, 860 F.2d 674, 676 (6th Cir. 1988).

Distributions in a chapter 7 case follow the order of priority in § 726(a). Payment of post-petition interest to unsecured creditors is the last priority before any distribution of surplus to the debtor or to equity security holders. 11 U.S.C. § 726(a)(5)-(6).

The UST argues that the TFR should not be approved because it fails to provide for post-petition interest on claims under § 726(a)(1)-(4). He contends that the Trustee should distribute the available funds for payment of post-petition interest to unsecured creditors before paying LULU. 11 U.S.C. § 726(a)(5).

At the Hearing, the Trustee maintained that there are no excess funds to pay post-petition interest because the Settlement Order requires payment of the balance of the funds from the estate to LULU, and § 726(a)(5) applies only if assets remain in the debtor's estate after all distributions have been made under § 726(a)(1)-(4). (Hr'g Tr. at 39). Simply put, the Trustee views LULU as a subordinated general unsecured creditor entitled to distribution under § 726(a)(3) before the payment of any post-petition interest claims under § 726(a)(5). (UST Ex. #4). The language of the

Settlement Order states otherwise. The Settlement Order clearly indicates that only surplus funds were going to LULU.  As such, it was not "moved up" in the priority scheme of § 726. LULU, as the stand in for VCR can only occupy the last tier of § 726 as the recipient of surplus funds.

For the reasons previously discussed, LULU's claim is not an allowed, general unsecured claim against the estate and cannot be paid pursuant to § 726(a)(3) as the Trustee suggests. The Settlement Order authorizes payment to the escrow agent of "[a]ll funds remaining in the bankruptcy estate of VCR I, LLC **after** *payment of **all** claims against the estate*." (Dkt. #963 at 4) (emphasis added). This language does not specifically include or exclude payment of post-petition interest to creditors with unsecured claims against the estate. Nowhere in the Settlement Order is LULU's allowed claim referred to as a "general unsecured claim." (Dkt. #963). The Court concludes that LULU's claim can only be paid after, not before, the distribution of post-petition interest to unsecured creditors under § 726(a)(5).  To deny unsecured creditors their statutory right to interest on their allowed claims when they have been unpaid for almost ten years during this Bankruptcy Case is not only a violation of § 726(a)(5), but is particularly unjust where that denial would allow the Trustee additional compensation though a mechanism created in a Settlement Order. The Court agrees with the UST that if the Trustee had intended that result, he should have clearly set it out in the Settlement Motion (Dkt. #945) giving all general unsecured creditors notice that entry of the Settlement Order would deny them payment of their accrued interest. He did not, and the Settlement Order did not grant that relief.

With respect to the Trustee's concern about paying post-petition interest to Pradeep and Vilma, they settled their claims and were paid in full. There is nothing in any of the pleadings to suggest that Pradeep and Vimla reserved any right to claim post-petition interest or that the terms contained in the Settlement Order did not constitute a full and final settlement of their claims.

The Court shares the UST's concerns that "not reducing the commission here would have the harmful effect of giving trustees [an] incentive to seek out equity security holders so that they can distribute money or funds normally to a debtor to a third party in order to be allowed to take Trustee comp on such a distribution." (Hr'g Tr. at 84; Dkt. #992 at 8). The Court cannot allow the procedural mechanism in the Settlement Order to void the non-negotiable exclusion in § 326(a) and the priority payment order set forth in § 726(a). *See United States v. AWECO, Inc. ( In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984).

## C.  Court's Ruling Preserves the Agreed Judgment and Settlement Order

Finally, the Court rejects the Trustee's argument that removing LULU's disbursement from the commission base would constitute an impermissible collateral attack on the Settlement Order. The Trustee contends that this Court ruled in the Settlement Order that the disbursement to LULU should be included in the commission base when it authorized the filing of a proof of claim on LULU's behalf. His argument invokes the law of the case doctrine, although he does not expressly phrase it as such.[27]

The Court finds that the plain language of the Agreed Judgment and Settlement Order did not adjudicate the Trustee's compensation, transform or recharacterize LULU into a creditor or a party in interest, or reorder the distribution priorities. *See AWECO, Inc.*, 725 F.2d at 298 (holding that bankruptcy courts may not approve a settlement "unless the court concludes that priority of payment will be respected as to objecting senior creditors"). The Court was simply presented with a method, urged by the Trustee and the Rai family members, to satisfy the claims of Vimla and Pradeep, avoid the delay of litigating the Rai family's disputes, and close the Bankruptcy Case.

---

[27] Under the law of the case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions. *Alberti v. Klevenhagen*, 46 F.3d 1347, 1351 (5th Cir. 1995). The doctrine encompasses those decisions "decided by necessary implication as well as those decided explicitly." *Id.* (quotation omitted).

No objection to the Settlement Motion was filed. The Court thereafter approved the settlement without making any decision about the order of priority of LULU's claim under § 726(a) or the Trustee's commission-based compensation under § 326(a).

To the UST's point, there was no mention in the Settlement Motion of any intent to deviate from the Bankruptcy Code's priority rules, and the Settlement Order, drafted by the Trustee, did not address it. If that had been the Trustee's intent—elevating the priority of the distribution of surplus funds to LULU above § 726(a)(6), then fair notice was not provided in the Settlement Motion. This Order preserves the spirit and intent of the Settlement Order and Agreed Judgment but does not stretch or inflate them to adjudicate priority and compensation issues not contained in the four corners of the two documents.

## Conclusion

At bottom, the funds in question cannot be anything other than VCR's surplus funds. By re-routing payment of those funds from VCR to LULU pursuant to the Settlement Order, the parties cannot create by agreement an exception to the exclusion in § 326(a). The effect of the Settlement Order was to make LULU the stand in for VCR. LULU could only receive the surplus funds that VCR was entitled to receive after all creditors had been paid. As such, there is only one category that the payment to LULU fits within—§ 726(a)(6), which contemplates the return of equity to the debtor. Therefore, the Court finds that the Trustee must exclude disbursements to LULU in the base for calculating his commission under § 326(a). As *Vona* explains, § 326's carve-out compensation is predicated on the policy that debtors should not have to pay compensation to get their own money back. *Vona*, 333 B.R. at 195-96. Because there is no question that the funds to be disbursed to LULU are surplus funds belonging to VCR, compensation cannot be paid.

The UST argues in the alternative that even if the Trustee is entitled to a commission on the funds paid to LULU, the Court should exercise its discretion to reduce the amount "to take account of the fact that the Trustee has managed to boost his compensation through the questionable means of inserting a purportedly 'administrative' measure into a stipulated order." (Dkt. #992 at 8); *see Hill v. King (In re King)*, 802 F. App'x 133, 137-38 (5th Cir. 2020) (holding that "extraordinary circumstances" existed to justify a reduction in the presumptively reasonable § 326 commission based on a finding that the chapter 7 trustee breached her fiduciary duty to the estate). Because the Court finds that the Trustee's calculation of his base commission was incorrect and that compensation based on payment to LULU should be excluded, it is unnecessary to issue a ruling on the UST's alternate request.

The Court further finds that the unpaid general unsecured creditors are entitled to payment of post-petition interest.[28]

IT IS, THEREFORE, ORDERED that the Objection is hereby sustained.

##END OF ORDER##

---

[28] There does not appear to be any dispute that the Trustee would be entitled to a commission on the post-petition interest.